21100. COCHRAN *v.* KENDRICK.

DECIDED APRIL 1, 1931.

*Clifford E. Hay, Jesse J. Gainey,* for plaintiff in error.
*T. A. Edmondson, James B. Burch,* contra.

LUKE, J. George Kendrick, by his next friend, brought an ac-

tion against W. B. Cochran to recover damages for injuries sustained as the result of the alleged negligent operation of an automobile on one of the principal streets of the City of Thomasville. The jury returned a verdict for the plaintiff and the questions raised by the record here are, whether the trial judge erred (1) in overruling defendant's demurrer to the petition, or (2) in overruling the defendant's motion for a new trial.

Omitting some of the allegations that are deemed unnecessary to a determination of the questions presented for decision, the petition as amended alleges in substance:

3. That Broad street is a through street extending in a northerly and southerly direction in the City of Thomasville; that at the time of the collision herein referred to there was in force in said city: (1) an ordinance making Broad street a "through street;" (2) an ordinance requiring that before turning to the left, any person operating any vehicle shall indicate his intention of so doing by "extending the arm horizontally as a signal for guidance of those in the rear," and, before stopping, shall signal by "extending the arm vertically, so that it may be seen by drivers of vehicles in the rear;" and (3) that "it shall be unlawful for any operator to stop, stand, or park any vehicle in such manner or under such conditions as to leave available less than sixteen feet of the width of the roadway for the free movement of vehicular traffic."

4. That between the hours of 4 and 5 on the afternoon of January 9, 1930, plaintiff was traveling north at about the middle of a designated block on Broad street on a Harley-Davidson motorcycle "at a rate of speed of not more than six miles per hour."

5. "That defendant started his automobile . . when plaintiff was not more than thirty feet from the defendant, . . both being on the east side of Broad street and going in a northern direction;" that when plaintiff was "approximately fifteen feet in the rear of said automobile," defendant suddenly and without warning or signal of any kind turned his automobile "in a westerly direction across Broad street in an attempt to make a U turn;" that the defendant "suddenly and without any warning stopped his said automobile in the middle of his U turn about ten feet from the eastern curb of said Broad street," blocking plaintiff's passageway on the left side of said street, and causing him to turn to his right in an attempt to avoid striking said automobile.

6. "Plaintiff was compelled by the negligent and careless manner of defendant to attempt to pass in the rear of defendant's car, defendant . . not leaving sixteen feet of the said street for traffic."

7. Plaintiff was seriously, painfully and permanently injured, and suffered extreme shock to his nervous system.

8. This paragraph states plaintiff's age, expectancy, prior good health, earning capacity, and incapacity to labor in the future.

9. That the cause of said collision was the failure of the defendant to signal before stopping his automobile, as required by the ordinances referred to; and that he also violated the law of Georgia prohibiting the stopping of a vehicle without extending the hand from the left side of the vehicle to warn persons approaching from the rear.

10. This paragraph has reference to plaintiff's alleged injuries.

11. This paragraph was stricken from the petition by plaintiff.

Grounds 2, 5, 6, 8, and 3 of the demurrer (except subsection e of paragraph 3 thereof) are abandoned by counsel for plaintiff in error. Subsection e of paragraph 3 of the demurrer is that "the fifth paragraph of the petition and the petition as a whole should be stricken, . . because said petition fails to show the width of the street at the point in question, or the length of the automobile, . . or the width of that part of the street in front of or in the rear of said automobile, or the amount of space necessary to the safe passage of a motorcycle."

The entire contention urged in regard to this part of the demurrer in the brief of counsel for plaintiff in error is this: "If the petition, like the evidence, showed the street to be sixty feet wide, the plaintiff's allegation that he was not left sixteen feet of clear space would render the petition self-contradictory." The allegation last referred to by counsel is one of fact, which, upon demurrer, must be taken as true; and if the defendant wished to refute it, he had the right to do so, if he could, by evidence adduced upon the trial of the case. Indeed, it appears from the record that he did allege in his answer that the street was sixty feet wide, and adduced testimony that it was. It will be observed that the petition as amended alleged that plaintiff was not left sixteen feet of clear space between the defendant's automobile and the west side of the street, and that the defendant stopped his automobile "about ten feet

from the eastern curb of Broad street." We do not think it was necessary to plaintiff's case that he apprise defendant of the length of his own automobile; nor do we think it was necessary to allege "the amount of space necessary to the passage of a motorcycle." The allegation last invoked would appear to be a conclusion of the pleader, unless he further alleged the width of the particular motorcycle in question.

It is quite true that a plaintiff should allege his cause of action with such fullness and precision as will enable the defendant to answer. *Bradstreet Co.* v. *Oswald,* 96 *Ga.* 396 (23 S. E. 423). It is also true, however, that: "reasonable certainty is all that can be required, even by special demurrer. The plaintiff is not required to set out his whole cause of action in a single paragraph of his petition, and a general statement in a particular paragraph is not objectionable, if particularized in subsequent paragraphs of the petition." *L. & N. R. Co.* v. *Watts,* 20 *Ga. App.* 637, 638 (93 S. E. 255); *Atlanta, K. & N. Ry. Co.* v. *Smith,* 119 *Ga.* 667 (3), 670 (46 S. E. 853). We are satisfied that there is no merit in the ground of the demurrer under consideration.

Paragraph 4 of the demurrer follows: "The allegation in the sixth paragraph of the petition that 'plaintiff was compelled to attempt to pass in the rear of defendant's car' should be stricken, (1) because the same is a bare conclusion of the pleader; (2) because the compelling force is not made to appear with sufficient certainty to put defendant on notice as to what is meant thereby; (3) because the particular negligence therein referred to is not set out; and (4) because plaintiff fails to show why he could not or did not bring his alleged machine to a complete stop before driving it into the rear of the automobile, which he alleges was then and there standing still." Construing the allegation referred to in connection with the other allegations of the petition, which need not be repeated here, this ground of the demurrer is not meritorious.

Ground 7 of the demurrer raises questions which have already been substantially passed upon in our conclusion as to subsection *e* of paragraph 3, and as to paragraph 4 of the demurrer. It is not meritorious.

Ground 9 of the demurrer attacks the allegation in the ninth paragraph of the petition that the collision was the result of the defendant's turning his automobile at a place other than the inter-

section of streets without signaling, as being "a bare conclusion of the pleader." We are satisfied that, construing the allegation referred to in connection with the other allegations of the petition as amended, this ground of the demurrer is not meritorious.

When the allegations of the petition as amended are measured by the rule that "a cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage (*Ellison* v. *Ga. R. Co.*, 87 *Ga.* 691, 699, 13 S. E. 809), it sets out a cause of action. Therefore, we hold that the general demurrer to the petition is not meritorious.

In urging their contention that "the evidence demanded a verdict in favor of the defendant," counsel for the plaintiff in error rely strongly upon the rule stated in the case of *L. & N. R. Co.* v. *Lusk*, 37 *Ga. App.* 99 (139 S. E. 89). It is this: "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal. And unless there be other evidence tending to establish his right to recover, he is not entitled to a finding in his favor, if that version of his testimony the most unfavorable to him shows that the verdict should be against him."

In his answer, the defendant denied paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 of the petition; and further pleaded that the proximate cause of the plaintiff's alleged injuries, if any, was his own negligence in operating his motorcycle at approximately forty miles an hour without looking ahead, "thereby accidentally driving his said motorcycle . . into the rear end of defendant's automobile, notwithstanding said automobile was standing still near the centre of the street," which was sixty feet wide, "with plenty of room in both its front and rear for either automobile or motorcycle to pass in safety."

We shall not undertake to set out the testimony of all the witnesses, or all the testimony of any witness. However, the following portion of the plaintiff's testimony shows his version of the catastrophe, and some of the more important alleged contradictions in his testimony. "When I first saw Dr. Cochran's automobile it was fixing to turn away from the curb and turn around. I guess I was then twenty or twenty-five feet from it. When it started to turn I was within fifteen feet of it. When he stopped his automobile I

was not more than ten feet from it. Dr. Cochran gave no signal. I was going between twenty and twenty-five miles an hour. I passed one automobile in that block. . . There was another automobile coming from the north coming down south, and he (defendant) stopped his. When he did I was about ten feet from him and hit him a kind of a glancing lick. I couldn't go in front of him. If I had I would have got hit by two of them—both it and the other one too. I tried to go back of him. . . At the time of the collision, I was not running faster than fifteen miles an hour. . . If he had kept going I never would have hit him. If I had known that he was going to stop I could have stopped. . . There was another automobile coming from the north, but I don't know how far it was away. . . I tried to pass through the narrow space at the rear of Dr. Cochran's car, because I did not want to go ahead of him and get hit." We next quote from defendant's cross-examination: Q. "But somewhere up Broad street you saw another car coming?" A. "It wasn't very far though." Q. "A block away?" A. "No, sir, not that far." Q. "About half a block away?" A. "About that." Q. "So, then, when you got to Doctor Cochran's car, the other car half a block away wasn't interfering with any of the west half of the street, was it?" "In overtaking people, don't you pass to the left?" A. "Yes, sir." Q. "And to Doctor Cochran's left, didn't you have half of a wide, broad street? A. "No, sir, that other automobile was closer to him than I was. . ." Q. "You had all of Broad street except the width of his automobile on the right-hand side up until the time he started to turn to the centre, didn't you?" A. "I had half of it." Q. "And you were about the centre of the street?" A. "Sure." Q. "Going in the same way?" A. "Yes, sir." . . Q. "And you went into that five-foot space and hit his car in the rear?" A. "Sure." Q. "When all the rest of Broad street was open and clear, except for a car half a block away?" A. "Well, an automobile was coming this way." Q. "That car half a block away was all that kept you from using forty or fifty feet to the west of Doctor Cochran's, isn't it?" A. "Yes, sir."

Mrs. Clyde Dunn, sworn for the plaintiff, testified in part as follows: "When George Kendrick passed me he was going about twenty or twenty-five miles an hour. . . I then looked back and saw Doctor Cochran's car standing still in the street. The motor-

cycle was going toward it. . . All that George could do was drive his motorcycle against Doctor Cochran's car. He couldn't possibly go any other way. I know that street is sixty feet wide, but he couldn't go the other direction. If he had, he would have hit the other car which was over there some place."

The defendant swore in part: "The way I was about to turn in the street that day was the way I usually turn, and is the way everybody else in Thomasville turns around. I knew nothing of any law against it until that accident occurred. When I started to turn I gave no signal, and when I stopped I gave no signal. . . It is true that Broad street is a very much traveled street. . . There is a lot of traffic out there." The ordinances pleaded by the plaintiff were introduced in evidence, and his injuries were proved.

According to testimony adduced by the defendant, his automobile had come to a stop long before plaintiff's motorcycle struck it; plaintiff was traveling at a very high and reckless rate of speed; and the proximate cause of the collision was the speed at which plaintiff was going, and his failure to look ahead and go to the left of said automobile, where he had ample room to pass. It also appears from defendant's witnesses that there was enough space to the right of his car for defendant to pass, to wit twelve feet.

It will be observed that plaintiff appears to have been somewhat confused in testifying. However, it appears from the record that such confusion arose upon a rigorous cross-examination, in the main, in regard to such elusive factors as time, distance, and speed, which could only be estimated by the defendant, and which were necessarily estimated by him while riding a motorcycle. It is also true that the testimony of Mrs. Dunn (briefly referred to above) "tends to establish his right to recover." It is also true that the defendant very candidly admits that he violated certain ordinances of the City of Thomasville by starting to turn in the middle of a block, and starting his car and stopping it without giving any signal. In our opinion the jury were warranted in concluding from the evidence that an emergency existed at the time and place of the collision; and the question as to whose negligence brought about that emergency was a jury question. "Ordinarily the questions as to whether such an emergency existed, and as to the relative diligence or negligence of the parties, and as to what negligence, if any, was the proximate cause of injury from a collision in such a case are

for the jury alone to determine." *Olliff* v. *Howard,* 33 *Ga. App.* 778 (127 S. E. 821). In our opinion there is evidence to support the verdict; and we therefore hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

It appears from the first special ground of the motion for a new trial that the court charged the jury as follows: "I charge you that it is negligence per se for any person driving an automobile to fail to observe and obey the ordinances, or either of the ordinances, of the City of Thomasville, Georgia, which prescribe:" Following the foregoing statement, the court charged seriatim the three ordinances of the City of Thomasville referred to in the pleadings. These ordinances were introduced in evidence. Any violation of them, or any one of them, was negligence per se, and we are at a loss to understand the force of the contention in the ground that the judge either intimated or expressed his opinion as "to what had been proved with reference to the purported ordinances." Neither can we understand how "such charge tended to make defendant liable in damages for plaintiff's injuries, regardless of whether such injuries were the direct or proximate result of a violation of said ordinances." The trial judge appeared studiously to avoid any such tendency. For instance, he charged: "If, in a given case, the injuries complained of did not flow naturally and directly from the wrongful act or omission attributed to the defendant, or could not reasonably have been expected to result therefrom, or would not have resulted therefrom but for the interposition of some independent, unforseen cause, the defendant's such antecedent wrongful act or omission would not be the proximate cause of the injury complained of." Again, the court charged: "In order to recover in this case, it must be made to appear not only that the defendant was negligent in the way or some of the ways as laid down in the petition, but also that such negligence, if any, resulted in, as the proximate cause thereof, physical or bodily injuries to the plaintiff, such as are claimed in the petition." The contention that said charge was rendered confusing by the further instruction, "As to what is or is not negligence in this case is a question for the jury," is not valid. Waiving the fact that the assignment is incomplete for the reason that it does not show wherein the charge "was confusing" (*Riddle* v. *Sheppard,* 119 *Ga.* 930 (3), 47 S. E. 201; *Wade* v. *Eason,* 31 *Ga. App.* 256, 120 S. E.

440), the only apparent effect of it could have been that the jury might possibly have concluded from it that they were to determine whether or not the violation of the municipal ordinances referred to was negligence per se, and this would have been harmful to the plaintiff and beneficial to the defendant. "To require a new trial, not only error, but injury, must appear." *A. C. L. R. Co.* v. *Odum,* 5 *Ga. App.* 780 (4) (63 S. E. 1126). Of course, it follows that plaintiff in error can not complain of a charge in his favor. *Southern States Life Ins. Co.* v. *Morris,* 24 *Ga. App.* 746 (2) (102 S. E. 179). The charge complained of in the first special ground is not erroneous for any reason assigned.

Special ground 2 complains of this excerpt from the charge of the court: "If you shall find that neither the plaintiff nor the defendant were at fault, or negligent, the plaintiff's injuries, if any, will be attributed to accident; and if you shall find the plaintiff's injuries, if any, were the result of a pure accident not occasioned by any failure, if any, on the part of either of the parties to exercise ordinary care and diligence, the plaintiff can not recover." "Movant assigns the said charge as error, because under it the injuries in question could not have been the result of accident if the defendant was at fault, even though such fault neither caused nor contributed to cause any of such injuries; . . that said charge was erroneous for the further reason that under it the injuries in question could not have been the result of accident, unless both plaintiff and defendant were without fault, regardless of whether such fault of plaintiff or defendant caused or contributed to cause such injuries." The foregoing criticisms are somewhat hypercritical, but, in our opinion, they are refuted by the charge itself. In this connection see *Chattanooga, Rome & Columbus R. Co.* v. *Huggins,* 89 *Ga.* 494 (8) (15 S. E. 848).

The third special ground, complaining that the court erred in charging the theory of permanent injury, because there was no evidence on which to base it, is not good. Dr. S. L. Cheshire testified in part: "His left leg was broken. He had a compound fracture. He had also a dislocation of the wrist of the right hand. . . His leg healed, but in a few days it broke loose again, and I am pretty sure he has some more dead bone. It does not look so favorable. He has not yet walked on his broken leg. . . I was in hopes that I could cure it completely, . . giving George a

good leg, but I am not sure now. . . The injured leg is somewhat shorter than the other. It will not be shorter if we can get in there to fix it up like we intend to. . . His injury has incapacitated him from doing any work up to the present time, and will amount to a partial incapacity in the future. . . We treated the infection and tried to set his leg. It was partially set. . . The proper treatment will, in my opinion, give him a good leg, but, of course, we can not always be certain about these things." The plaintiff swore in part: "I was in the hospital five months and one week. This leg is one-half inch shorter than the other. . . I can move my toes, but not yet move the ankle." (Here the plaintiff exhibited his leg to the jury.) The trial judge properly overruled this special ground. *White* v. *Knapp*, 31 *Ga. App.* 344 (7) (120 S. E. 796).

The fourth and last special ground complains of this charge: "The court charges you that if you believe from the evidence that plaintiff was negligent, not amounting to the failure to use ordinary care, and was suddenly put in a place of peril by the defendant, with insufficient time to consider all the facts and circumstances which surrounded him, the law would not require of him the same degree of care and caution that it would a person who had ample time for the exercise of his judgment. In other words, when a person is suddenly put in a position of peril by the negligence of another, and where, under the circumstances, the emergency is so great that he has to act without having time to think, then a person confronted with such emergency is not held to as strict accountability as a person who has ample time to consider the facts and circumstances and the situation." The foregoing charge is in the language of a charge quoted in *White* v. *Knapp,* supra. This court said that the first sentence of the charge was perhaps inaccurate for the reason that the degree of care which the plaintiff was required to exercise was not changed by the circumstances. However, such inaccuracy was not deemed sufficient to work a reversal in that case. In our opinion, the charge upon the theory of an emergency was warranted by both the pleadings and the evidence, and the criticism in that regard is not valid. It is further contended that the excerpt gave the plaintiff "the benefit of that degree of care required of him in an emergency, irrespective of whether his own negligence caused or contributed to such emergency." To our minds the charge re-

futes this criticism. The last criticism is that "such charge is confusing when considered in connection with any other part of the charge tending to hold the plaintiff accountable for his own negligence in causing or contributing to such emergency." This criticism is too general for consideration. However, it is not well founded.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*