24153. SOUTHERN RAILWAY CO. *v.* LUNSFORD, admx.

DECIDED FEBRUARY 22, 1935. REHEARING DENIED MARCH 2, 1935.

*Griffith & Matthews, Maddox, Matthews & Owens,* for plaintiff in error.

*Arnold, Arnold & Gambrell,* contra.

SUTTON, J. Mrs. Olivia Cox Lunsford, as administratrix of the estate of James Monroe Cox, brought suit for damages against the Southern Railway Company, on account of the death of her intestate by reason of the defendant's alleged negligence. Plaintiff averred that Cox's death ensued when a locomotive-engine of the defendant, of which Cox was engineer, and which he was running from Birmingham, Ala., to Atlanta, Ga., overturned and wrecked, and Cox was mangled, burned, and scalded to death by reason of the steam and boiling water escaping from the overturned engine; and that this was the result of the alleged negligence of the defendant in having a defective locomotive-engine, insufficient appliances, and a defective and insecure track and roadbed. Plaintiff alleged that defendant's locomotive was equipped with an apparatus known as a "watchman," and that, had the same been in proper repair and condition when the front trucks left the rail, it would have tripped a trigger and automatically applied the air to the airbrakes and stopped the engine within 200 yards, thereby preventing the engine from finally leaving the rails and overturning; and it was alleged that the defendant failed to inspect said engine before leaving Birmingham on this trip and that an inspection would have disclosed the condition of the "watchman." Plaintiff alleged that the action was brought under the act of Congress of April 22, 1908, and all amendments thereto, regulating the liability of interstate carriers. She further set up that she was the daughter of the deceased, who was a widower, that he had one other child, a son, and that the deceased contributed $200 a month of his earnings to the support of his children. There was an allegation in the second count of the petition that a rock or other object was negligently allowed by the defendant to be on the outside rail at the point where the front trucks left the rails, which should

have been discovered by the defendant's employees. It was alleged in both counts that the front trucks of the engine first became derailed and after running about seven tenths of a mile on the ties off the rails, the engine came to a switch, whereupon it finally jumped the track and turned over, and that from this switch to where the engine turned over, about 100 yards, the cross-ties were in a rotten condition, all of which contributed to the wreck of the engine. The material difference between the two counts is that in the first the plaintiff alleged that there was a sharp curve at the place of the initial derailment, and that the improper elevation of the rails, the rotten ties, and the absence of proper spikes at this point had caused the track to become defective and thereby caused the derailment of the front trucks, which should have been remedied by the defendant's employees; and in the second count, it was alleged that a rock or other object at this point caused the derailment, which likewise could have been discovered by the defendant's section foreman had he been performing his duty, and likewise could have been seen by the fireman of the engine had he been keeping a proper lookout from his side of the cab, but which could not be seen by the deceased from his side of the cab. It was contended by the plaintiff that had the "watchman" attached to the locomotive been in proper condition, the subsequent overturning of the locomotive would have been averted; and also that the defendant failing to discover the defective "watchman," which proper inspection would have disclosed, which it was not the duty of the deceased to make, but which it was the duty of defendant to make, was negligence, and had the condition of the watchman been discovered, the wreck would have been prevented.

The defendant demurred to both counts of the petition upon the ground that they set up no cause of action against it, and upon various special grounds. The trial judge overruled the demurrer upon all grounds. To the overruling of the demurrer the defendant excepted pendente lite, and assigned error thereon in the bill of exceptions.

Plaintiff amended her petition, the substance of the amendment being that the safety chains attached to the front end of the front trucks on the engine were too short and operated to pull the trucks up at the point where the engine was first derailed, and therefore were a contributing factor to the engine's leaving the rails, and

that these chains were not in a proper condition and that it was not safe to operate the locomotive in that condition, and that the defendant and its agents placed the ·chains upon its engine in this manner and condition.

Defendant demurred to this amendment upon the ground that the allegations thereof were vague and were mere conclusions, and also that they furnished no issuable facts or reason why the defendant was liable for the death of the deceased, and that there were no averments showing or tending to show that these chains were required by the safety-appliance acts of congress and there was nothing to show that the manner in which these chains were placed on the engine was a violation of the acts of congress or of the rules or regulations of the interstate-commerce commission. The trial judge overruled this demurrer, and the defendant excepted pendente lite, and assigned error thereon in the bill of exceptions.

On the trial, the plaintiff introduced evidence tending to support the allegations of her petition. The defendant defended the action upon the theory that what caused the derailment was the rock placed upon the track by some miscreant, but not by any of its employees, that the "watchman" was not out of repair, that the wreck was not caused by the "watchman's" not being in condition, that the "watchman" was not a part of the locomotive and was not required by the safety-appliance acts or any rule of the commission, that the wreck was not caused by any act of negligence or otherwise, or any omission of duty upon the part of the defendant, that the deceased did not earn the monthly sum alleged, and that it was not liable to the plaintiff on account of the death of the deceased, ·it not being guilty of any negligence, as alleged.

The trial resulted in a verdict for plaintiff for $5000. Defendant moved for a new trial, the motion was overruled, and a writ of error was brought to the Supreme Court, where it was transferred to this court, because this court and not that court had jurisdiction thereof.

■ An action may be properly brought, under the Federal laws as amended, by the administratrix of the deceased employee of an interstate carrier, who was a widower, and contributed a part of his earnings to the support of his two children, one of whom is the administratrix, although neither of them is a minor. It is contribution rather than dependency that gives rise to an action for the

death of an employee of an interstate-railway company under the employer's liability act. U. S. C. A., title 45, § 51, notes on pp. 93, 360-5; Moffett *v.* B. & O. R. Co , 220 Fed. 39; Chesapeake &c. R. Co. *v.* Shirley, 218 Ky. 337 (291 S. W. 395); *W. & A. R.* v. *Townsend, 36 Ga. App.* 70 (135 S. E. 439).

■ A petition alleging that the defendant railway company was negligent in the manner ·in which it maintained its railroad-track at a certain curve thereon, that the death of plaintiff's intestate was caused by the derailment of the front trucks of a locomotive on account of the unsafe and insecure track and roadbed at this curve, the ties being rotten and the spikes being loose, which was all apparent and visible, causing the outside rail to become insecure and without sufficient elevation, allowing the front trucks· of the locomotive, of which the decedent was engineer, to get off the rails at this point, and alleging that the defendant was negligent in allowing its tracks to remain in this condition and that the same should have been remedied by the defendant's section-foreman had he properly performed his duties in the inspection and maintenance of the tracks at this curve, set out a case good as against demurrer. Questions of negligence, proximate cause, diligence, due care, etc., are generally for a jury to. determine, except in plain and unmistakable cases. If the defendant was negligent, as alleged, in the maintenance of its tracks, and if this negligence caused the front trucks to derail, which in turn caused the engine· to turn over, killing the deceased, nothing else appearing, the defendant would be liable to the plaintiff. *L. & N. R. Co.* v. *Bean,* 49 *Ga. App.* 4 (174 S. E. 209); *Central of Ga. Ry. Co.* v. *Leonard,* 49 *Ga. App.* 689 (2) (176 S. E. 137).

■ In pleading, reasonable certainty is all that is required. Matters relating to the structural condition of a railroad-track, or of a locomotive engine, or of appliances thereon, concerning defects in the same, where it is charged that a railway company is negligent in their condition, in failing to keep them in proper repair, in failing to inspect the same, and that such defective locomotive, appliances, and insecure track and roadbed contributed to and caused the death of plaintiff's intestate, need not be alleged with minute particularity as to details, condition, structure, and so on. The plaintiff is not required to do more than clearly and definitely describe these matters. They are such as lie peculiarly within the

knowledge of the railroad company, and all that is required is for the plaintiff to state her cause of action with sufficient definiteness and completeness to enable the defendant to ascertain the nature of the charges made against it and of the acts of negligence alleged, so that it may properly prepare its defense thereto. *Cochran* v. *Kendrick,* 43 *Ga. App.* 135, 138 (158 S. E. 57) ; *Charleston &c. R. Co.* v. *Attaway,* 7 *Ga. App.* 231 (66 S. E. 548) ; *A. C. L. R. Co.* v. *Davis,* 5 *Ga. App.* 214, 217 (62 S. E. 1022) ; *Southern Ry. Co.* v. *Black,* 141 *Ga.* 35, 38 (80 S. E. 323) ; *King Hardware Co.* v. *Ennis,* 39 *Ga. App.* 355 (5) (147 S. E. 119) ; *Central Ry. Co.* v. *Brandenberg,* 129 *Ga.* 115, 120 (58 S. E. 658) ; *Bittick* v. *Ga., Fla. & Ala. Ry. Co.,* 136 *Ga.* 138, 140 (70 S. E. 106) ; *Cedartown Cotton &c. Co.* v. *Miles,* 2 *Ga. App.* 79 (58 S. E. 289).

■ The gist of the act of Congress of 1911, as amended in 1915 and 1924 (36 Stat. 913, 38 Stat. 1132, 43 Stat. 659 (45 U. S. C. A., § 23), which was passed for the purpose of regulating the liability of interstate carriers, is to make it "unlawful for any carrier to use . . any locomotive unless said locomotive, its boiler, tender and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which put," and further that "said locomotive, its boiler, tender and all parts and appurtenances" must be inspected as therein provided. U. S. C. A., title 45, § 23. This law imposes on carriers in interstate commerce the absolute duty to keep their locomotives and all the parts and appurtenances thereof free from defects and safe to operate. It is not a question of negligence, but the railway company is bound to see that all parts and appurtenances are in a safe and proper condition. Lehigh Valley R. Co. *v.* Beltz, 10 Fed. (2d) 74; Hines *v.* Smith, 275 Fed. 766; Frederick *v.* Erie R. Co., 36 Fed. (2d) 716; *W. & A. R. Co.* v. *Townsend,* supra; *W. & A. R.* v. *Meister,* 37 *Ga. App.* 570 (140 S. E. 905).

The only defense that an interstate carrier can make to a suit based on the Federal law above referred to, brought for the death of an employee, is that proper appliances were provided and were maintained in good condition, and that the appliance alleged to be defective was not a contributing cause to the death of such employee. *S. A. L. Ry. Co.* v. *D'Avignon,* 41 *Ga. App.* 263 (153 S. E. 96).

■ A safety device constructed and designed for the purpose of automatically applying the airbrakes whenever the front trucks

of a locomotive engine leave the rails from any cause, called a "watchman," which is attached to the front trucks under the boiler of the engine, some 35 or 40 feet in front of the cab where the engineer sits, and which will, if in proper working condition, when the trucks leave the rails and drop down as much as two and a half inches, trip a trigger, which opens a valve and puts the airbrakes on, and will stop the train within 200 yards, and which in this case had been attached to the locomotive for from five to seven years, and with which all of defendant's locomotives on this division are equipped, is properly a part and appurtenance of the locomotive, within the purview of the Federal laws, requiring a locomotive engine of an interstate railway company and all parts and appurtenances of such locomotive to be in proper condition to operate safely, and that they be kept in that condition, although the appliance is not one that is required by such Federal laws to be attached to the locomotives of interstate-railway companies.

■ An action brought by the administratrix of a deceased railroad engineer, whose death resulted from the overturning of a locomotive engine of the defendant railway company, which the deceased was in charge of and operating in interstate commerce as engineer, under the Federal employer's liability act of 1908, as amended in 1911 and 1915,—in which act it was provided that all locomotives, boilers, and tenders, and all parts and appurtenances thereof, must be in proper working condition at all times, and that the locomotives and all such parts and appurtenances must be properly inspected,—where the petition alleged that there was attached to the locomotive in question a contrivance known as a "watchman," which was a device designed so that when the front trucks got off the rails for any reason it would trip a trigger and cause the airbrakes on the entire train to be put on and would stop the movement of the train within 200 yards, and that this appliance was not in proper condition and did not work on this particular occasion, but that when the front trucks of this engine got off the rails the airbrake was not applied, and the front trucks of the engine ran along upon the ties for about seven tenths of a mile, when it came to a switch, and the trucks were thrown under the engine in such a way as to cause the engine to turn over and kill the engineer, a cause of action was set out under the Federal statutes, where it was further alleged that the defendant railway company had

all its locomotives so equipped with the "watchman," that the same had been in use thereon for several years, that the deceased engineer had no other way of ascertaining when the front trucks of his engine were off the rails, and that had this little "watchman" been in proper working order it would have automatically applied the air and stopped the train and prevented the subsequent overturning of the locomotive which killed the decedent. This is so even though the Federal safety-appliance act and the rules and regulations of the interstate-commerce commission relative to interstate carriers do not specifically designate this particular contrivance as a safety device which must be placed upon the locomotives of interstate carriers, because when the defendant placed such device upon its locomotives it became a "part and appurtenance" thereof within the purview of the Federal statutes relative to safe appliances of interstate carriers. The fact that the little "watchman" was not a device in general use by other railway companies, and was not a standard safety appliance, would not prevent it from becoming a part and appurtenance of the locomotives of the defendant. If a part and appurtenance thereof, then, under the safety-appliance laws, it must be at all times kept in proper working condition, and if, as a result of the failure of such appliance to be in proper condition and to work on this particular occasion, the decedent, an engineer of the defendant railway, met his death, the railway company would be liable. It was an absolute duty on the part of the railway company to see that its locomotive, boiler, tender and "all" parts and appurtenances thereof were in proper condition and were kept in proper condition. *S. A. L. Ry. Co.* v. *D'Avignon,* supra; Hines v. Smith, 275 Fed. 766; Baltimore & O. R. Co. v. Groeger, 266 U. S. 521 (45 Sup. Ct. 169) ; Johnson v. Southern Pacific Co., 196 U. S. 1 (25 Sup. Ct. 158, 49 L. ed. 363) ; Lehigh Valley R. Co. v. Beltz, 10 Fed. (2d) 74; Kilburn v. Chicago &c. R. Co., 289 Mo. 75 (232 S. W. 1017) ; Fredericks v. Erie R. Co., 36 Fed. (2d) 716; *W. & A. R.* v. *Townsend,* supra; Wyatt v. N. Y. &c. R. R., 45 Fed. (2d) 705.

The trial judge did not err in charging the jury in substance that if they found that the little "watchman" attached to the locomotive in question by the railway company was just an experiment and not designed as a part and appurtenance of the locomotive, there would be no duty resting upon the defendant to keep the

"watchman" in repair or in functioning condition. This charge worked no injury to the defendant.

■ The trial judge did not err in charging the jury that if they found from the evidence that the watchman had been in general use by the defendant for such a length of time that it became a fixed and permanent part of the locomotive and was, as to the decedent, held out as a part and appurtenance thereof, it was then such a part and appurtenance of a locomotive as is meant by and comes within the purview of the safety-appliance laws.

■ The trial judge charged the jury that it was the defendant's duty to keep the locomotive and all parts and appurtenances thereof in proper condition and safe to operate in the service to which put, that this was an absolute duty of the railway company, that it was for the jury to determine under the facts whether or not the "watchman" was in proper working order, and that if the jury "believe from the testimony that the defendant failed to have the part and appurtenance of its locomotive, known as the 'watchman' in proper condition and safe to operate in the service to which the same was put, and if the same did fail to function and operate, and if its failure to so operate, because it was not maintained in good order, was the proximate cause of the death of Mr. Cox, then the plaintiff could recover in this case. Of course, the circumstances at the time should be such as to cause a reasonably prudent man and a reasonably cautious man to have relied upon the little 'watchman.' " This was a correct statement of the law, with the exception of the last sentence; which was not error as against the defendant.

■ The court also charged the jury that if the initial derailment occurred from some cause other than the defendant's negligence, "still, if you believe from the evidence that this engine was equipped with a part and appurtenance known as a 'watchman,' which was designed to trip a valve when the front trucks should become derailed, and if you believe that had it been in proper condition and safe to operate in the service to which the same was put that it would have caused the valve to trip when the front trucks became derailed, and that had it functioned the train would have been stopped by applying the brakes before it finally became derailed, and if you believe that the failure of this 'watchman' to properly operate was due to the fact that it was not in proper condition and safe to operate in the service to which it was put, and that if it had

operated, the train would have been stopped and the decedent's life saved, then I charge you in that event the defendant would be liable in this case in damages to the plaintiff." This charge was not erroneous and was not subject to any of the criticisms directed against it. Under this charge, as applied to the evidence, the jury were authorized to find that if the "watchman" had functioned, the brakes would have been applied, and that, if the brakes had been applied, the engine would not have subsequently overturned and killed the decedent, and that if the "watchman" had been in proper condition it would have functioned.

■ The charge of the court as a whole was correct and submitted the issues in this case to the jury in a fair and proper manner. There were two theories in the case, one of negligence and the other based on the safety-appliance laws, and the judge properly separated these theories and instructed the jury as to the same. None of the special assignments of error show any error as against the defendant. There was evidence tending to substantiate the plaintiff's case on both theories. The verdict was authorized, and the action was properly instituted by the plaintiff as administratrix of her deceased father, who contributed to the support of his children.

■ It follows, from the foregoing rulings, that the petition set out a cause of action as to two theories, and the trial judge did not err in overruling the general demurrer; that the special demurrers were properly overruled, and the demurrer to the amendment was not well taken; and that there was evidence to support the verdict, and no error appeared upon the trial of the case, and the verdict was not contrary to law, and the trial judge did not err in overruling defendant's motion for new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*