30322. BROWN *v.* SERVICE COACH LINES INC.

438

Decided June 27, 1944. Rehearing denied July 24, 1944.

*E. W. Maynard, S. G. Jones, A. S. Boone, G. Seals Aiken,* for plaintiff.

*Victor Davidson, Martin, Martin & Snow,* for defendant.

MacIntyre, J. ■ Miss Alice Brown brought an action against Service Coach Lines Inc. for personal injuries sustained while a passenger on one of the defendant's buses. The case proceeded to trial and resulted in a verdict for the plaintiff in the sum of $900. Being dissatisfied with the amount of the verdict, she moved for a new trial, contending that the verdict was so small as to justify the inference of gross mistake or undue bias. The order overruling her motion for a new trial was excepted to, and the case brought to this court for review. The evidence, as it relates to the amount of damages that the plaintiff should recover, and, when considered in the light most favorable to upholding the verdict, was substantially as follows: Dr. Clay, who saw the plaintiff at the hospital immediately after the accident and daily during the two weeks she remained in the hospital and frequently thereafter until he dismissed her six months and a day after the accident, testified that "the nature of her injury was a fracture of the left humerus at the junction of the lower and the middle third of the arm; and [that she] also complained of swelling and pain in left leg and knee; she had some abrasions over these areas, but X rays were negative for fracture; had some contusion of left chest. That is the extent. She was in nervous shock when she came in. The contusions and abrasions cleared up in normal course of time. The only trouble she had was with this fracture of the left humerus. By the humerus I mean the arm between the elbow and the shoulder. The junction of the lower and middle third is where the fracture was. . . The X ray after the fracture was reduced showed the bone to be in good position. Then she was examined at intervals during the time she was in the hospital here, and after she left, under the fluoroscope; and X rays made at

various times to check up on our healing. The splints were removed on March 11th, about two months [after the accident]. I saw her after the splints were removed very often—every two or three weeks. The last time I saw her was on July 11, 1942, 12 months after the accident. On July 11, 1942, I made a careful examination of her arm, and she had perfect results with the arm. However, there was a little shortening of the arm, which you would expect in a fracture of that kind. However, the shortening does not interfere with the function of the arm. . . By July 11 she could use her wrist and her elbow and arm as well as she could prior to the injury . . I do not think, as far as impairment is concerned, that it is a permanent deformity and no permanent disability." (Brackets ours.) Dr. Weir, a witness for the plaintiff, examined her shortly before the trial on July 5, 1943, and testified that the broken arm was about one and a half inches shorter than the other one, and that there was a bow in the elbow of the arm. "I think the union in that fracture is perfect. The bone is not completely straight, but the union is as firm as ever. . . I think the bow of the left arm is a little perceptible. She has just as efficient use of that arm as the other." Dr. Dupree, a Wilkinson County physician, who made X rays on Sunday, the day before the trial, a witness for the plaintiff, testified: "I have made an examination of her recently—yesterday. I made an X-ray picture of it. . . Turn it edgeways and this is what we call the anterior posterior, made from the bone toward the back, shows the curvature of the bone, with a spur bone here which was broken off at the time of the injury. That was never healed back. Instead of this bone healing in direct alignment for some reason nature saw fit to build another bone around it, leaving that spur of the original bone still in her arm. . . As to indicating that there is a crook in the joint, the only way that the crook in the joint would be, that bone being drawn out of line. . . It is shown angular where these two bones here dip opposite each other like that, half of the bone being broken, it angulates, and that throws the axle of the joint out of line. Naturally, nature will have a tendency, or at least will attempt to lengthen this bone and shorten that one so as to throw the joint back into line, but it has not done such an excellent job. There is some crook. . . Of course this other bone is evidently fragmented; but for some reason instead of this

bone healing along the line of this spur in a straight position it built a new bone around it. The building of this new bone would make a bulge up there. I think that is a permanent injury. I would say that bone is likely to remain unless it is operated on, or something done to it, and I do not know whether that would benefit it or not. . . I would say that the bone had reached its maximum improvement. It has been about eighteen months since it happened. . . You see that would be right about the fracture, right along here, near to her shoulder, near the middle of the lower third. I think that is such a permanent injury that it will affect her during her life—that arm will. She may become dexterous with that arm where she could do most anything she could do with the other one, provided it is used for a short period of time, but an arm in that position would naturally tire quicker because it is working at a disadvantage. . . The result of that bone like it is will evidently cause discomfort or pain, especially if used a great deal. . . Doctor Clay got a splendid union of the kind it is. The shortening is not responsible for the impairment of the use of the arm—it is the manner in which it unites—out of line. I have examined the arm under a fluoroscope." The plaintiff testified, in part, that shortly before the trial her lawyer had sent her to see Dr. W. A. Newman, an orthopedic physician in Macon and that he examined her and made X rays of her arm. However, she did not call Dr. Newman as a witness or take his depositions. The plaintiff, immediately prior to the accident, had had temporary work as a stenographer in Macon, receiving $12 per week. She had previously taken a bookkeeping and stenographic course, but had not completed the stenographic part of the course. After she was dismissed by Dr. Clay on July 11, 1942, she did some work around her father's farm, including the driving of a tractor. She then went back to business college for six weeks or two months, and on November 19, she went to work for the Bibb Manufacturing Company in Macon as a bookkeeper for $20 per week. Prior to the trial she had been raised to $22 per week, and was to receive another raise on July 19. The mother, father, and several relatives and friends of the plaintiff, as well as the plaintiff herself, testified as to her pain and suffering.

The order overruling the motion for a new trial is as follows:

"1. The action is one to recover damages resulting from personal injuries sustained by the plaintiff while riding as a passenger

on a bus of the defendant, operating as a motor common carrier. The jury returned a verdict in favor of the plaintiff for $900, and being dissatisfied with the amount of the verdict, she moves for a new trial. 1. [Special] ground one of the motion complains that the damages fixed by the jury are legally inadequate, and are so small as to justify the inference of gross mistake and undue bias or prejudice. (Brackets ours.) 'The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias.' Code, § 105-2015. No negligence on the part of plaintiff was claimed, and the verdict of the jury must be construed as a finding that the defendant was negligent in one or more of the ways set forth in the pleadings. *Anglin* v. *Columbus,* 128 *Ga.* 469, 472 (57 S. E. 780). The jury, having found that the defendant was liable because of negligence, proceeded to assess damages in favor of the plaintiff. In giving consideration to the verdict of a jury it must be borne in mind that 'they are the "chemists" with the right to "examine every molecule of the evidence, and to feel every shock of its probative value."' *Moore* v. *Sears, Roebuck & Co.,* 48 *Ga. App.* 185, 186 (172 S. E. 680), quoting from *Vickers* v. *Atlanta & W. P. R. Co.,* 64 *Ga.* 306. In the light of the record we can not say that the jury's verdict was the result of 'gross mistake and undue bias or prejudice,' as alleged in the motion, 'the existence of prejudice or bias can not rest upon suspicion. That the verdict was the result of prejudice and bias must be shown.' *City of Rome* v. *Davis,* 9 *Ga. App.* 62, 67 (70 S. E. 594), cited in *Allyn &c. Book Pub. Co.* v. *Nicholson,* 61 *Ga. App.* 672 (7 S. E. 2d, 316). The record does not justify the inference that the verdict of the jury was the result of 'gross mistake.' Indeed, 'There is a presumption that the verdict of a jury is based on a fair consideration of all matters presented to it.' *McCullough* v. *Clark,* 88 W. Va. 22 (106 S. E. 61). See: *Western & Atlantic Railroad* v. *Mathis,* 63 *Ga. App.* 172, 173 (10 S. E. 2d, 457), where the principle announced in *McCullough* v. *Clark, supra,* is referred to.

"2. The jury, having found for the plaintiff, the remaining grounds of the motion, alleging error in the charge of the court and in the admission of evidence, must be held harmless. 'Where, in a suit against a railway company for damages, the jury returns

a verdict in favor of the plaintiff, he can not justly complain of an erroneous charge touching his right to recover, or of any other error which did not operate to his prejudice.' *Peterson* v. *Wadley & Mount Vernon R. Co.*, 117 *Ga.* 390 (43 S. E. 713). In the course of the opinion, p. 391, in discussing the alleged erroneous charge, the court said: 'Suffice it to say this charge did not actually have the effect of excluding these "theories of the plaintiff," or else the jury were not at a loss to discover equally good theories upon which to base the verdict they returned in her favor,' and, at p. 392, referring to certain evidence alleged to have been illegally admitted, said: 'However this may be, the fact remains that the jury found the plaintiff was entitled to recover, and apparently honestly, honestly endeavored to ascertain the extent of her injuries and to award her just and reasonable compensation.' See, also, *O'Quinn* v. *Douglas &c. Railway Co.*, 7 *Ga. App.* 309 (1) (66 S. E. 810); *Trammell* v. *Atlanta Coach Co.*, 51 *Ga. App.* 705 (1) (181 S. E. 315). We are of the opinion, however, that the remaining grounds of the motion fail to set forth harmful error. See in connection therewith: Ground No. 2—*Hill* v. *Chattanooga Railway & Light Co.*, 21 *Ga. App.* 104 (6) (93 S. E. 1027); *McVeigh* v. *Harrison*, 68 *Ga. App.* 316 (22 S. E. 2d, 752). Ground No. 3— *Leslie* v. *Georgia Power Co.*, 47 *Ga. App.* 723 (4) (171 S. E. 395). Grounds Nos. 4 and 6—*Cochran* v. *Kendrick*, 43 *Ga. App.* 135, 143 (158 S. E. 57); Ground No. 5—*Pollard* v. *Weeks*, 60 *Ga. App.* 664, 672 (4 S. E. 2d, 722), and cit. Ground No. 7—There was no request to charge the principle stated in this ground. The court instructed the jury that no acts of negligence were charged against the plaintiff, and it must be presumed that the jury understood and applied the instructions so given. Compare, *Baker* v. *Moore*, 182 *Ga.* 131, 137 (184 S. E. 729). Grounds Nos. 8, 9, 10, and 11— *Higgins* v. *Cherokee Railroad*, 73 *Ga.* 149 (9 b); *Davis* v. *Augusta Factory*, 92 *Ga.* 712, 713 (18 S. E. 974); *Heidt* v. *Southern Telephone Co.*, 122 *Ga.* 474, 478 (1) (50 S. E. 361); *Columbus Railroad Co.* v. *Kitchens*, 142 *Ga.* 677, 679 (83 S. E. 529); *City of Sandersville* v. *Moye*, 25 *Ga. App.* 64, 68 (102 S. E. 552). Accordingly, plaintiff's motion for new trial is overruled, and the new trial prayed, is denied. This 17th day of September, 1943. George S. Carpenter, Judge superior courts, Ocmulgee circuit."

The judge, in division 1 of his order overruling the motion for a new trial, discusses and passes only upon ground 1 of the amendment to the motion for a new trial, hereinafter referred to as special ground 1. The plaintiff, in special ground 1, contends that "the verdict of the jury was wholly inadequate, and indicates prejudice, or bias, or gross mistake." The judge, after a preliminary narrative and discussion of the plaintiff's contention as set forth in special ground 1, ruled against this contention in the following language: "In the light of the record we can not say that the jury's verdict was the result of 'gross mistake and undue bias or prejudice,' as alleged in the motion . . [for] the record does not justify the inference that the verdict of the jury was the result of 'gross mistake.'" (Brackets ours.) The plaintiff argued that the authorities referred to by the court in the preliminary discussion of special ground 1 referred only to the rule of law applicable to the granting of a new trial by the appellate court on the ground of the inadequacy of the verdict, and not to the rule of law applicable to the granting of a new trial on such a ground by the trial judge; that it is obvious from the order overruling the motion for a new trial that the presiding judge thought that he had no power to grant the new trial, unless the evidence showed that the verdict was the result of gross mistake, or undue bias, or prejudice; and that the judge did not exercise the discretion vested in him by law.

"Before a verdict becomes final it should, where the losing party requires it by a motion for a new trial, receive the approval of the mind and conscience of the trial judge. He is sometimes spoken of as the thirteenth juror. Until his approval is given, the verdict does not become binding, in a case where a motion for a new trial contains the general grounds. *Wallers* v. *State,* 6 *Ga. App.* 565 (65 S. E. 357). In interpreting the language of an order overruling a motion for a new trial, it must be presumed that the trial judge knew the rule as to the obligation thus devolving upon him, and that in overruling the motion he did exercise this discretion, unless the language of the order indicates to the contrary and that the court agreed to the verdict against his own judgment and against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact." *Seaboard Air-Line Ry. Co.* v. *Benton,* 43 *Ga. App.* 495, 505 (159 S. E. 717). We

should presume in the instant case that the presiding judge knew his power to review the verdict on a motion for a new trial, and that this power is not derived from section 105-2015 of the Code, but from another source—it existed at common law, and is given express recognition in our constitution and code. Code, §§ 2-3206, 2-201, 70-101, 70-102, 70-202, 70-208. We presume that the trial judge knew the rule as to the necessity of exercising his discretion, and that he did exercise it. We can not assume, in the absence of any language in the order which indicates the contrary, that the judge knowingly declined to exercise his discretion. It is true that section 105-2015 of the Code, which is codified from the case of *Lang* v. *Hopkins,* 10 *Ga.* 37, and the decisions cited in the discussion preliminary to the decision rendered in division 1 of the order overruling the motion for a new trial, refer to the limitations of the appellate courts to set aside a verdict for excessive or inadequate damages; they also refer to the broad right of the jury to originally fix the damages. The rules of law governing (1) the right of the jury to originally fix the damages, (2) the right of the appellate court to grant a new trial where the verdict is alleged to be excessive or inadequate, and (3) the right of a trial judge to grant a new trial where in his discretion he thinks the verdict "unfair, unjust, contrary to the evidence, excessive, or too small," exist apart from and independent of each other. *Holland* v. *Williams,* 3 *Ga. App.* 636, 638 (60 S. E. 331). The cases cited in division 1 of the order, we think, were cited to show the broadness of the right of the jury to originally fix damages, and to support by analogy the rule which the court thought was applicable, and which he was seeking to follow in this case, to wit: that the verdict is a persuasive influence not to be lightly disregarded, even though the broad discretion of the jury as to the amount of damages is not a limitation on the discretion of the trial judge to set aside the verdict, when he thinks it unfair, unjust, contrary to the evidence, excessive, or too small. *Holland* v. *Williams,* supra. The concluding paragraph of the order overruling the motion for a new trial is that "plaintiff's motion for a new trial is overruled, and the new trial prayed, is denied." And the bill of exceptions recites: "The said motion for a new trial in said case came on regularly to be heard . . and after argument by opposing counsel, the judge of said court . . passed an order denying the motion on

all grounds therein contained." We see nothing in the order to indicate that the judge was dissatisfied with the verdict on the discretionary grounds; on the contrary, in overruling the motion on all the grounds, and refusing a new trial on all of them, his approval is indicated. The trial judge is presumed to have known, and we think did know, his obligation was to exercise his legal discretion, and that in overruling the motion for a new trial he did exercise this discretion.

■ We have decided in the previous division of this opinion that the trial judge knew and exercised his legal discretion in overruling the motion for a new trial on all of its grounds, meaning, of course, that he overruled it on the usual general grounds as well as on special ground 1, which raised the question that the damages were inadequate. *Trammell* v. *Atlanta Coach Co.,* 51 *Ga. App.* 705 (2) (181 S. E. 315). He also overruled the remaining ten special grounds. We will now take up the exception presented in the first special ground, i. e., that the trial court abused its discretion in not sustaining the contention of the plaintiff as set forth in this special ground, the contention being that the verdict was contrary to the evidence and so small that it indicated gross mistake or undue bias. No negligence on the part of the plaintiff was claimed. Furthermore, the judge, in his charge, told the jury three different times that the plaintiff was not guilty of negligence. The jury found, we think, that the defendant was negligent in one or more of the ways alleged in the plaintiff's petition; that the injury arose wholly from the negligence of the defendant without contributory negligence on the part of the plaintiff; and fixed the damages at $900.

The jury were authorized to find that the plaintiff was totally incapacitated for twenty-four weeks, and that at the time she became incapacitated she was earning $12 per week, which would make the value of her lost time $288; that her hospital bill was $114, and her doctor's bill $150; all of the value of $552. We find no evidence in the record from which the jury would have been authorized to determine the actual value of any time lost by the plaintiff other than for the aforesaid twenty-four weeks. However, the evidence showed that at some time after she was discharged by Dr. Clay, and prior to the trial, she obtained a job at $20 per week, later raised to $22.50 per week, which she was get-

ting at the time of the trial, two years after the accident; and that she was to get another raise in about fifteen days after the trial. If the jury found in favor of the above-enumerated items of damage, and that each item was of the value above stated, this would have left $348 of the $900-verdict as the amount of damages which was awarded for pain and suffering. No measure of damages can be prescribed for pain and suffering except the enlightened conscience of intelligent jurors. In the instant case the jury had a right to accept Dr. Clay's testimony that, "I do not think, as far as impairments of function is concerned, that it is a permanent deformity and no permanent disability." Also the testimony of Dr. Weir, who was a witness for the plaintiff, that "the bone is not completely straight, but the union is as firm as ever. . . I think the bow of the left arm is a little perceptible. She has just as efficient use of that arm as of the other." The testimony of Dr. Dupree conflicted with that of the other doctors, and the jury were not required, if they saw fit not to do so, to accept all or any part of the testimony of Dr. Dupree. Thus they were not required to accept that part of his testimony which referred to the deformity of the arm on account of a slight bend or bow in it, or a slight shortness thereof. The jurors heard the testimony of the other doctors, as it related thereto and had the opportunity of seeing the plaintiff's arm, while she was on the stand.

The determination of the question, as to whether a verdict for damages is inadequate in the legal sense, lies within the sound discretion of the trial court, which will be interfered with by the appellate court only in case of a manifest abuse of discretion. *Holland* v. *Williams,* supra; Ann. Cas., 1916B, 388. Lord Denman once expressed himself on this point as follows: "A new trial on a mere difference of opinion between the [appellate] court and jury as to the amount of recovery in an action of tort for unliquidated damages ought not to be granted. Something more must be disclosed to warrant interference, where substantial damages have been returned." Berry *v.* Lake Erie &c. R. Co., 72 Fed. 488. (Brackets ours.) Substantial damages is "a sum, assessed by way of damages, which is worth having; opposed to nominal damages, which are assessed to satisfy a bare legal right." Black's Law Dictionary (3d ed.), 1671; 2 Abbott's Dictionary of Terms and Phrases, 513; 3 Bouvier's Law Dictionary, 3173; 40 Words & Phrases, 496. *Green* v. *Weaver,* 63 *Ga.* 302, 305.

In the case of Berry *v.* Lake Erie &c. R. Co., supra, the headnote stated: "In an action by an infant of the age of seven years, brought by her next friend, against a railway company, to recover damages for personal injuries resulting in the loss of plaintiff's right leg below the knee, the jury gave plaintiff a verdict for $1100. There was no proof of any expense incurred, or pecuniary loss. *Held,* that the amount of the verdict, though less than the [appellate] court would have approved, did not afford such evidence of bias, passion, prejudice, or mistake as to justify setting it aside as inadequate." (Brackets ours.) And in the body of the opinion it was said: "The verdict of the jury settled—and, I think, correctly—that the injury arose wholly from the negligence of the defendant, without contributory fault on the part of the plaintiff. When an action sounds in tort, for the recovery of unliquidated damages, to the admeasurement of which no fixed rule of law can be applied, the [appellate] court ought not to set aside the verdict of a jury simply because the damages are, in its opinion, inadequate or excessive, unless it clearly appears that the verdict is so grossly inadequate or excessive as to afford evidence of bias, passion, or prejudice, or of mistake and oversight, in failing to take into consideration the proper elements of damage in assessing the amount of recovery. The present case does not seem to fall within this rule." (Brackets ours.) Where the item of damage complained of can be measured only by the enlightened conscience of intelligent jurors, and the amount assessed is substantial, the appellate court ought not to set aside the verdict of the jury on the ground of inadequacy simply because the damages are, in its opinion, inadequate, unless it clearly appears, as stated in the Berry case, supra, that the verdict is so small as to afford *evidence* of a gross mistake or undue bias; or, as differently stated in Ann. Cas., 1916B, 385, that the verdict is so small as to support a *convincing* inference of gross mistake or undue bias; or, as stated in our Code, § 105-2015, that the verdict is so small as to *justify* an inference of gross mistake or undue bias. Where the trial judge refuses to order a new trial on the general grounds in a damage case, this court has stated that if the trial court "can conscientiously acquiesce in the verdict, though it may not exactly accord with his best judgment, or though some other finding might seem somewhat more satisfactory to his mind, and if his sense of justice is rea-

sonably satisfied, he should, in the absence of some material error of law, affecting the trial, approve it, and this court will uphold him in so doing," and will not say that he abused his discretion. In short, this court will interfere with that discretion only in cases of manifest abuse. *Holland* v. *Williams,* supra. The item of damage complained of being for pain and suffering on account of a broken arm and other temporary bruises, which were the result of the occurrence in question, and there being no measure of damage for pain and suffering, except the enlightened conscience of intelligent jurors, and the amount of the damages found therefor being substantial, we can not say that the trial judge abused his discretion when he said that this item of damage for pain and suffering was not so small as to justify the inference of gross mistake or undue bias. Nor can we say that he abused his discretion when he said that the total damage as shown by the verdict was not inadequate.

■ In this case the verdict was for $900. The plaintiff contended that this amount of damages fixed by the jury was inadequate, and that it was reversible error to fail to charge "that if the jury found in favor of the plaintiff they should find full damages, as shown by the evidence, without any deductions of any kind, for the reason it is admitted by counsel for the defendant [that] she was not guilty of any negligence which caused or contributed to her injuries." The charge of the court substantially embraces the rules of law on the measurement of damages, as applied to the pleading and the evidence in this case. The matters alleged to have been erroneously omitted from the charge were elaborations of the instructions actually given. If the plaintiff thought the charge was not full enough, or clear enough, or that it omitted something that would put his side more fairly before the jury than would the charge given, then the notice of the court should have been called thereto; and in the absence of an appropriate written request, the plaintiff can not now complain. *Kimbrell* v. *State,* 57 *Ga. App.* 296 (195 S. E. 459) ; *Hood* v. *State,* 67 *Ga. App.* 291 (19 S. E. 2d, 927) ; *Western & Atlantic R. Co.* v. *Tate,* 129 *Ga.* 526 (6) (59 S. E. 266) ; *Tabor* v. *Macon Railway &c. Co.,* 129 *Ga.* 417 (59 S. E. 225).

■ The motion for new trial contained nine other grounds complaining of certain portions of the charge, as well as of the admis-

sion of certain testimony, but none of the alleged errors have any bearing on or relation to the amount of damages which the plaintiff should recover. "Where, in a suit against a railway company for damages, the jury returns a verdict in favor of the plaintiff, he can not justly complain of an erroneous charge touching his right to recover, or of any other error which did not operate to his prejudice." *Peterson* v. *Wadley &c. R. Co.,* 117 *Ga.* 390 (supra). "In a suit by a passenger against a railroad company to recover damages for personal injuries, a verdict was rendered for the plaintiff in the sum of $4300. . . On his motion for a new trial, *held,* that any error of law relating to the defendant's liability was rendered harmless by the verdict, unless it was such as might have influenced the jury to reduce the amount that the plaintiff was entitled to recover." *O'Quinn* v. *Douglas &c. R. Co.,* 7 *Ga. App.* 309 (supra). Since the plaintiff recovered a verdict, and, since the alleged errors in the charge, and the admission of the testimony, concern solely her right to recover, the errors, if any, urged in the grounds referred to in this division of the opinion are necessarily harmless, and, as the case is being affirmed, it is unnecessary to discuss them. We are unable to say the overruling of the motion for a new trial on all or any of its grounds was an abuse of discretion by the trial judge.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*