Richard BALL, Plaintiff-Respondent,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, Defendant-Appellant.

No. 46809.

Missouri Court of Appeals,
Eastern District,
Division One.

May 9, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 11, 1984.

Application to Transfer Denied
July 17, 1984.

Donald E. Engle, Eric A. Cunningham, Jr., Daniel M. Buescher, St. Louis, for defendant-appellant.

C. Marshall Friedman, Newton G. McCoy, Kenneth E. Rudd, St. Louis, for plaintiff-respondent.

SNYDER, Judge.

This is an appeal from a judgment entered on a jury verdict awarding plaintiff-respondent Richard Ball $600,000 on his negligence claim against defendant-appellant Burlington Northern Railroad Company based on the Federal Employers' Liability Act (FELA). 45 U.S.C. § 51 et seq. The judgment is affirmed.

Burlington contends the trial court erred in: (1) submitting MAI 24.01 as the verdict directing instruction because it gave the jury a "roving commission;" (2) refusing Burlington's tendered "present value" instruction; (3) allowing Ball's counsel to examine John Fite by reading documents obtained from Burlington's files; (4) overruling Burlington's motion for a mistrial when Ball's counsel read from some articles from medical journals; (5) allowing Dr. Charles Powell, an expert witness on Ball's behalf, to testify regarding an article which he had written; (6) overruling Burlington's objections to the testimony of Dr. James W. Coulter and admitting Exhibits 31–36 and 53–57; (7) allowing cross-examination of Burlington's medical witness, Dr. Robert M. Bruce, with summaries of articles from medical journals; and (8) not setting aside the verdict or ordering a remittitur because of the allegedly excessive award by the jury.

Richard Ball began working as a painter for Burlington's predecessor in interest, the St. Louis—San Francisco Railway Company (Frisco), in 1950. Before working for Frisco, Ball had had no respiratory or lung problems.

Among other duties, Ball spray-painted the interior of hopper railroad cars (used for transporting foodstuff) with epoxy paints and a urethane coating which acted as a sealer. The urethane coating contained toluene diisocyanate (TDI) a chemical which is unsafe at levels greater than .02 parts per million.

The concentration of TDI inside a hopper car during the painting operation could reach as high as 8,000 times the recommended ceiling. To counter the possible danger from exposure to TDI, Burlington supplied Ball with a Devilbiss plastic air hood and a respirator, the efficacy of which was disputed.

Burlington witnesses agreed that the company would not use equipment not tested and certified by the National Institute of Occupational Safety and Hazard (NIOSH), a federal agency, or its predecessor in such matters, the Bureau of Mines. Yet, neither agency had certified the Devilbiss hood.

Ball painted 20 to 30 covered hopper cars between the latter part of 1976 and June 27, 1977. When he began to paint these cars more frequently, he began to suffer from sore lungs. Paint would enter the Devilbiss hood. Ball would use vaseline to remove the paint from his face, neck and nose. He would also take the hood off to blow paint out of his nose and cough it up from his throat. After coming back from vacation on June 27, 1977, Ball became ill while inspecting a railroad car and has not worked since that date.

Ball suffers from several respiratory ailments. Tests show a severe reduction in his small bronchial tubes. Excessive secretions of the large breathing tubes cause Ball to cough. Wheezing sounds made by Ball are symptomatic of spasms in the muscles of the large breathing tubes. The mucus membranes of Ball's sinuses were highly sensitive so that stimuli such as cold air and hair spray produced coughing, wheezing, and shortness of breath. In addition, Ball's heart must work harder because he is not receiving enough oxygen. All these symptoms were caused by exposure to TDI according to Ball's expert medical witness who also testified that

Ball's symptoms are permanent. The cause and permanency were disputed by Burlington's expert medical witness.

■ Burlington first contends that the trial court erred in submitting MAI 24.01 as the verdict director because MAI 24.01 gives the jury a "roving commission." Burlington has lost this same argument before the Missouri Supreme Court. *Bair v. St. Louis—San Francisco Ry. Co.*, 647 S.W.2d 507, 510–511[5] (Mo. banc 1983) cert. denied sub. nom. *Burlington Northern, Inc. v. Bair*, —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 109 (1983); *Dunn v. St. Louis—San Francisco Ry. Co.*, 621 S.W.2d 245, 254–255 (Mo. banc 1981), cert. den. sub. nom. *Burlington Northern Railroad Co. v. Dunn*, 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982). It loses again.

Next, Burlington complains that its tendered "present value" instruction, Instruction C, was erroneously refused because an employer has a right under FELA to have any future wage loss which a jury might award reduced to present value. Instruction C does not require the jury to reduce future wage loss to present value, but rather, instructs the jury to reduce an award for any pain and suffering in the future to present value.

■ The issue is whether FELA requires that an award for future pain and suffering be reduced by the jury to present value. The refusal to give an instruction requiring the jury to reduce an award for pain and suffering to its present value is not erroneous because such an instruction "... would improperly allow a jury to infer that pain and suffering can be reduced to a precise arithmetic calculation." *Flanigan v. Burlington Northern, Inc.*, 632 F.2d 880, 886[8] (8th Cir.1980). Point 2 is denied.

In its third point relied on Burlington charges that the trial court erred in allowing Ball's counsel to read from documents found in Burlington's files when respondent's counsel was conducting the direct examination of John Fite, who was Burlington's engineer of tests. The documents were concerned with the dangers of expo-

sure to TDI and the means available to prevent those dangers. Burlington argues that the examination constituted impeachment of Fite as to the truth of the excerpts from the documents.

■ Negligence within the meaning of FELA attaches if the employer knew or by the exercise of due care should have known that its standard of conduct is inadequate to protect its employees. See *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 1028[20, 21], 93 L.Ed. 1282 (1949). Because the harmful characteristics of TDI are not matters of common knowledge, the burden of proof was on Ball to show that in the exercise of due care Burlington should have known of them. See *Evinger v. Thompson*, 364 Mo. 658, 265 S.W.2d 726, 731[3, 4] (1954).

■ To show that an employer had constructive knowledge of the hazards to which it subjected its employees, it is not necessary that evidence provided to the employer regarding those hazards establish the truth or falsity of the hazard. Thus, in *White v. St. Louis—San Francisco Ry. Co.*, 602 S.W.2d 748, 753–754 (Mo.App. 1980), this court held that notations by the employee on the back of time cards submitted to his employer, which time cards stated that inadequate padding on the employer's locomotives were causing injuries to the employee, were admissible, not to show that such injuries were in fact caused by the locomotive, but to prove notice to the employer.

■ Similarly, notice to Burlington of the hazards associated with TDI and the proper means of protecting its employees was at issue here. Publications found in an employer's own files are relevant to show that the employer should have known of the hazards revealed by the publications. Thus, the documents were admissible not for the truth of the matters which they asserted, but merely to show notice, and accordingly, were not hearsay. See McCormick on Evidence § 246 (2d Ed.1972).

Burlington's reliance on *Kinnard v. Plastics Moulding Company*, 360 S.W.2d

340 (Mo.App.1962), is misplaced. In *Kinnard,* the questioned document was a bibliography of published scientific articles prepared by the witness, not publications taken from the defendant's own files. Point 3 is denied.

For its fourth point relied on, Burlington maintains that the trial court erred by refusing to grant Burlington's motion for mistrial when Ball's counsel read excerpts from Exhibits 16 and 31 through 36 to the jury. The point is without merit.

Exhibits 16 and 31–36 were identified by Dr. Powell, Ball's expert on industrial hygiene, as authoritative publications. Dr. Coulter, Ball's expert medical witness, also identified Exhibits 31–36 as authoritative publications.

Exhibit 16 was read to the jury without any hearsay objection. Thus, any objection to reading Exhibit 16 was waived.

After the title, the authors' names and the first portion of the first sentence of Exhibit 31 were read, the trial court sustained Burlington's counsel's hearsay objection. The other articles, Exhibits 32–36, were not read to the jury. The trial court refused to grant a mistrial.

■ Whether to grant a mistrial is a decision which rests within the sound discretion of the trial court. *State ex rel. State Highway Commission v. Wetterau Foods,* 632 S.W.2d 88, 90[3] (Mo.App.1982). No abuse of discretion occurred here because that portion of Exhibit 31 which was read to the jury conveyed no information regarding the hazards of TDI exposure. Point 4 is denied.

■ In Burlington's fifth point it contends that the trial court erred in admitting into evidence testimony of Dr. Charles Powell regarding Exhibit 25, an article written by Powell. Exhibit 25 was identified by Dr. Powell as an article on TDI written by him and published by NIOSH. Publications of NIOSH, which is a federal governmental agency, are available free of charge to the public. The article and the testimony surrounding it were admissible for the purposes of showing notice to Fris-

co and of establishing the qualifications of Dr. Powell as an expert witness. See *Kershaw v. Sterling Drug, Inc.,* 415 F.2d 1009, 1011[4] (5th Cir.1969); *Webb v. Fuller Brush Co.,* 378 F.2d 500, 502[2] (3d Cir. 1967). Point 5 is denied.

Burlington next objects on two grounds to the admission of Exhibits 31–36 and 53–57, which were articles from medical journals or industrial hygiene publications. First, it is contended that the exhibits were inadmissible hearsay. Second, Burlington maintains that Exhibits 35 and 53–57 were not admissible to establish notice to Frisco because the exhibits were excerpts from British medical journals which were not generally available to Frisco.

■ The articles were not hearsay. Hearsay consists of out-of-court statements admitted for the truth of the matters asserted by the statements. See McCormick on Evidence § 246 (2d Ed.1972). The articles were not admitted to show the truth of the matter which they asserted—the articles dealt with TDI—but to show notice to Frisco. Thus, the articles were not hearsay.

■ Exhibits 53–57, however, were not relevant to show notice to Frisco. In *Kinnard v. Plastics Moulding Company, supra,* this court held that the scientific knowledge possessed by the medical profession could not be imputed to an employer. 360 S.W.2d at 344[3]. Exhibits 53–57 were identified only by Dr. Coulter, a physician, as authoritative publications. There was no showing that Frisco had actual knowledge of the medical articles, or that Exhibits 53–57 were recognized as authoritative beyond the medical community.

■ Burlington has never questioned the relevance of the exhibits to prove notice, but rather has limited its objections to hearsay and lack of a proper foundation. Thus, any objection to the relevancy of the exhibits has been waived and the exhibits were admissible to prove notice given a proper foundation. Moreover, any error in the admission of Exhibits 31–36 and 53–57 was harmless because there was ample evi-

dence of notice, e.g., Frisco's own urethane file and Exhibit 25.

■ Regardless of whether the exhibits in question were admissible as substantive evidence to be considered by the jury, they were admissible for purposes of impeaching Burlington's medical expert, Dr. Bruce. Articles and treatises identified by one party's expert as authoritative publications may be used to impeach the testimony of an opposing party's expert. *Gridley v. Johnson,* 476 S.W.2d 475, 481 (Mo.1972). Dr. Coulter identified all the articles as well-recognized, authoritative, and "the type of publication that were available with respect to the toxic lung problems as a result of exposure to TDI." Dr. Powell laid a similar foundation regarding Exhibits 31–36. With the exception of the foundation and a brief unobjected-to comment on animal studies by Dr. Coulter, the exhibits were not used in Ball's case.

The reasoning in the preceding paragraph about the foundation laid for the admission of Exhibits 31–36 and 53–57 also disposes of Burlington's contention that sufficient foundation was not established for the admission of the articles to show notice. Point 6 is denied.

In its seventh point relied on, Burlington alleges trial court error in allowing Ball's attorney to cross-examine Dr. Bruce with summaries from Exhibits 16, 21, 31, 33 and 36 because Exhibit 16 was withdrawn from evidence and the other exhibits are summaries of articles not done by the authors of the articles.

The record does not support Burlington's assertion that Exhibit 16 was withdrawn; it was admitted into evidence. The other exhibits were also identified and admitted into evidence as medical articles. The only portion of the transcript cited by Burlington under Point 7 has no reference to the use of summaries. This court's own perusal of the record reveals only a solitary reference during the closing argument regarding summaries. There, Burlington objected to Ball's closing argument on the ground that Ball's counsel was reading from a summary of a medical article. The court overruled the objection.

■ Thus, the only reference in the record to summaries of articles is Burlington's counsel statement. A statement by counsel is not evidence. See MAI 2.01 (3d Ed.1981). The record, therefore, does not support a finding that summaries of articles were improperly used.

■ In the argument portion of its brief, Burlington maintains that Dr. Bruce could not be cross-examined regarding medical articles which he did not recognize as authoritative. This argument is denied for two reasons. First, this argument was not referred to in the point relied on. See *Berger v. Huser,* 498 S.W.2d 536, 539[2] (Mo.1973). Second, an expert may be cross-examined from articles and treatises which he does not recognize, so long as some other expert has testified that the publications are authoritative. See *Gridley v. Johnson, supra.* Here, Dr. Coulter identified the exhibits as authoritative and available. Point 7 is denied.

■ Burlington's final point is that the verdict is excessive and that this court should grant a remittitur of $350,000. Appellate courts exercise caution before interfering with or reducing the size of a verdict, and then only when the amount is manifestly unjust. *Hodges v. Johnson,* 417 S.W.2d 685, 689–690[8–14] (Mo.App.1967). In *Hodges v. Johnson,* the appellate court ordered a remittitur, but there the amount of special damages was well under the size of the verdict, the plaintiff's injuries healed without incident, and the injuries were not permanent. Here, on the other hand, there was evidence that Mr. Ball had suffered permanent lung damage, would incur substantial medical expenses in the future, was permanently disabled, and was in constant pain and suffering. The award was not manifestly unjust.

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.