72758. McKINNEY & COMPANY, INC. v. LAWSON.
(349 SE2d 763)

McMURRAY, Presiding Judge.

Plaintiff Kathleen A. Lawson brought suit against McKinney & Co., Inc. ("McKinney"), Ricki L. Rainey and the City of Atlanta seeking damages resulting from injuries sustained in an automobile-pedestrian accident. McKinney was the general partner in a limited partnership which owned the MiCasa Apartments. At the time of the accident, plaintiff was walking on public property which was adjacent to the MiCasa Apartments. She stepped into the street to avoid a tree which obstructed her path. As she did so, plaintiff was struck by an automobile which was driven by Ms. Rainey. In her complaint, plaintiff alleged that her injuries were proximately caused by Ms. Rainey's negligent driving and the failure of McKinney and the city to maintain their premises in a safe condition.

Prior to the start of the trial, plaintiff dismissed her claim against the City of Atlanta. The case proceeded to be heard and the jury returned a verdict in favor of plaintiff and against McKinney in the amount of $350,000. The jury also found in favor of defendant Rainey. Judgment was entered upon the verdict and McKinney moved for judgment n.o.v. or, in the alternative, for a new trial. The motion was denied and McKinney appealed.

An examination of the record reveals that on the morning of July

21, 1982, plaintiff was walking to work just as she had done every day for the previous 10 months. Her established route took her west on Collier Road from the east side of Seaboard Place to DeFoor Hills Road.

Collier Road was heavily travelled, especially in the morning hours. There was a sidewalk on the north side of Collier Road along a portion of plaintiff's route; there was no sidewalk on the south side of the road. Nevertheless, plaintiff walked along the south side of Collier Road facing traffic. After she crossed Seaboard Place, plaintiff walked in the gutter of the street (the gutter was made of concrete and was about two feet wide) until she came to a grassy area which bordered the MiCasa Apartments. The grassy area was a 13-foot strip of land which extended from Collier Road to the boundary of the land upon which the MiCasa Apartments sat.

As she walked along the grassy area, plaintiff approached a tree which was growing on the property of the MiCasa Apartments. The tree stood in a place where the road curved. The limbs of the tree were very thick and low to the ground; they stretched across the grassy area and extended three or four feet into the road. To surmount this obstacle, plaintiff stepped into the gutter and stood near the tree for a minute to listen for traffic. (She could not walk to the left of the tree because it was situated on a steep embankment. She could not walk under the tree because the limbs were too low.) When she thought the way was clear, plaintiff rounded the tree and was struck by the automobile driven by Ms. Rainey. Plaintiff's knee was severely damaged and surgery was required. *Held*:

1. This case involves a negligence claim against a landowner occupying land immediately adjacent to a public way. Accordingly, it "does not turn on the issue of a landowner's liability to invitees, licensees or trespassers who go upon his property and are injured there." *International Paper Realty Co. v. Bethune*, 256 Ga. 54, 56 (344 SE2d 228), aff'd 177 Ga. App. 330 (339 SE2d 296). Rather, the question for decision is whether the landowner negligently maintained its property in such a way as to render it liable to a person who, like plaintiff, is injured as a result thereof when he is rightfully at or near the property on a public street, sidewalk, or highway. Id.

Recognizing that the issue of its negligence was a question for the jury, McKinney contends the trial court erred in failing to grant its motion for a directed verdict on the ground that plaintiff's injuries were caused by a lack of care for her own safety. In this regard, McKinney points out that plaintiff was fully aware of the danger created by the overgrown tree having walked along Collier Road many times before; that plaintiff could have walked along the north side of Collier Road (the route she took on her way home from work) where there was a sidewalk for a part of the way; that nevertheless plaintiff

walked on the south side of Collier Road and carelessly stepped into the street when she encountered the tree. We disagree.

Before a trial court is authorized to direct a verdict in favor of one party and against another, the evidence must demand the verdict. Where there is any conflict in material evidence, the trial court does not err by refusing to direct a verdict. *Weatherspoon v. K-Mart*, 149 Ga. App. 424, 427 (3) (254 SE2d 418). The evidence in the case sub judice did not demonstrate that plaintiff was at fault as a matter of law. True, plaintiff was cognizant of the danger which the tree presented. However, the evidence authorized the jury to conclude that plaintiff took the safest possible route to work under the circumstances. Although there was a sidewalk on the north side of Collier Road (it began about 30 feet after the road began to curve), plaintiff was unable to cross the street safely to get to it. Why? Because there was no crosswalk between plaintiff's apartment and the north side of Collier Road until one reached DeFoors Ferry, a point well past the tree. Moreover, contrary to McKinney's contention, plaintiff could not have safely traversed Collier Road at Seaboard Place. That intersection was located at the bottom of a hill and plaintiff could not see cars approaching the intersection from the west. Finally, the evidence showed plaintiff went around the tree cautiously after satisfying herself that no vehicles were approaching.

"Questions necessitating a decision as to whether a given state of facts shows that lack of ordinary care for one's own safety which will bar recovery (within which category are placed those situations amounting to the assumption of the risk involved) or only that comparative negligence which will reduce it are generally for the jury." *Stukes v. Trowell*, 119 Ga. App. 651 (168 SE2d 616). Given the facts set forth above, we think the jury was authorized to conclude that plaintiff acted reasonably under all of the circumstances of this case. See generally *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 238 (227 SE2d 336). The trial court did not err in failing to grant McKinney's motion for directed verdict.

2. McKinney contends the trial court erred by failing to grant a motion for mistrial which was made when plaintiff interjected the issue of insurance into the case. This contention is not meritorious.

During the cross-examination of plaintiff, Ms. Rainey's counsel questioned her about a written statement which she gave following the accident. Thereafter, plaintiff's counsel made it known that he thought his client should be able to testify that the statement was given to an insurance adjuster from Allstate Insurance Company, Ms. Rainey's carrier. Thereupon, Ms. Rainey's counsel made an oral motion in limine to prevent plaintiff from injecting the matter of insurance into the case. In response, plaintiff's counsel asserted he was entitled to show all of the circumstances surrounding the written

statement since Ms. Rainey's counsel questioned plaintiff about it. After much colloquy, the trial court suggested that plaintiff "try to avoid using the name of the insurance company."

Subsequently, plaintiff testified on direct examination as follows: "Q: Do you remember the name of the individual who took that statement from you? A: No I don't. Q: Where was that statement taken? A: That was taken at my office, the Virginia Paper Company. Somebody from Allstate Insurance came . . ." Thereupon, counsel for Ms. Rainey objected and moved for a mistrial. Counsel for McKinney joined in the objection and the motion. The trial court overruled the mistrial motion. It then cautioned plaintiff's counsel not to say anything about insurance. The court added, however, "You can say a representative of this lady over here came to see you and you gave them a statement. . . ." When the jury returned to the courtroom, the trial court informed them that plaintiff's last answer was stricken and that the jury was to disregard the answer.

The direct examination of plaintiff continued as follows: "Q: Ms. Lawson, you said this lady came to your office and took a statement from you? A: Yes, she did. Q: On whose behalf — what was this lady's purpose in coming to see you, what did she tell you she was coming to see you for? A: She needed a statement for her records to settle the issue . . . Q: And whose interest was she representing? A: Ms. Rainey."

"In Georgia the injection into a case of testimony pertaining to liability insurance does not automatically require a grant of a motion for a mistrial. It is only where the testimony is so obviously prejudicial in its nature that its adverse effect cannot be eradicated from the minds of the jury or its consequences avoided by proper cautionary instructions from the court, that a mistrial should be granted. [Cits.] The determination as to whether these harmful factors are present in a case necessarily rests in the discretion of the trial judge. Appellate courts should never interfere with the exercise of that discretion unless it is made to appear that wrong or oppression has resulted from its abuse. This principle is historically respected in this jurisdiction. *Williamson v. Lunsford*, 119 Ga. App. 240 (166 SE2d 622)." *Wallace v. Cates*, 120 Ga. App. 228 (170 SE2d 40).

We cannot say that the trial judge abused his discretion to grant a mistrial in this case. The trial judge rebuked plaintiff's counsel and instructed the jury to disregard the reference to the insurance company. The reference to insurance coverage pertained to defendant Rainey, not McKinney. We cannot see how McKinney was prejudiced by the reference under these circumstances. See *Battle v. Strother*, 171 Ga. App. 418, 419 (2) (319 SE2d 887).

3. "Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the

amount thereof, when considered in connection with all the facts, must shock the moral sense, appear 'exhorbitant,' 'flagrantly outrageous,' and 'extravagant.' 'It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush.' It must carry its death warrant upon its face." *Realty Bond & Mtg. Co. v. Harley*, 19 Ga. App. 186, 187 (91 SE 254). See *Jones v. Spindel*, 128 Ga. App. 88, 92 (196 SE2d 22); *Redwing Carriers v. Knight*, 143 Ga. App. 668, 677 (239 SE2d 686). See generally OCGA § 51-12-12. In view of the evidence concerning the permanence and severity of plaintiff's injuries, as well as the pain she has borne and continues to endure, we cannot say the award of damages in this case was excessive. *St. Paul Fire &c. Ins. Co. v. Dillingham*, 112 Ga. App. 422 (145 SE2d 624).

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED SEPTEMBER 11, 1986 —
REHEARING DENIED OCTOBER 15, 1986 

*David A. Handley, Hugh M. Worsham, Jr.*, for appellant.
*James L. Ford, Charles H. Davis, Jr.*, for appellee.