44041. McKINNEY & COMPANY, INC. v. LAWSON.
(357 SE2d 786)

WELTNER, Justice.

Kathleen Lawson was struck by an automobile as she was attempting to go around a growth of tree branches which blocked a public right-of-way, and which extended out into the street. She brought an action against the motorist and against the landowner upon whose property the trees grew. A jury found no negligence on the part of the motorist, but found negligence on the part of the landowner and returned a verdict in favor of Lawson in the amount of $350,000. The Court of Appeals affirmed the trial court, *McKinney & Co., Inc. v. Lawson,* 180 Ga. App. 550 (349 SE2d 763) (1986). We granted certiorari to determine whether the landowner's liability was governed by our holding in *Intl. Paper Realty Co. v. Bethune,* 256 Ga. 54 (344 SE2d 228) (1986), and to consider whether the verdict was excessive.

1. Lawson was twenty-nine years of age at the time of her injury. Her testimony indicates that on between one hundred seventy to one hundred ninety occasions, when morning rush hour traffic was heavy, she knowingly left the safety of the shoulder to go into a public street "several feet" in order to go around branches which blocked her vision of approaching traffic, and which obscured her from the vision of approaching motorists. While she testified that she was "forced" to go out into the street in order to get around the branches, we can find no evidence that anyone or any circumstance *required* her to take the action which resulted in her injuries. Nor can it be said from the evidence that Lawson was ignorant of the danger to which, repeatedly, she subjected herself.

2. The fact that the tree branches blocked passage along the right-of-way was known to Lawson the first time she walked along the south side of Collier Road. The branches constituted a static condition, were not inherently dangerous in and of themselves, and they

did not change materially during the ten months Lawson detoured around them. Her knowledge of the risks involved was, at the least, equal to any knowledge attributable to the landowner. The negligence of Lawson came within a micron of the quantum of any negligence on the part of the landowner. An extract of the factual circumstances is set out in footnote one.[1]

3. Lawson's special damages did not exceed $4,500. By the time of trial, approximately three years after her injury, she had changed employers and was earning slightly more in salary than when she was injured. There is no question but that Lawson received a painful in-

---

[1] The testimony shows that Lawson had lived on Collier for about ten months prior to her injury. For almost every working day during this period she had walked to work, always taking the same route. Collier runs in a generally east to west direction. Lawson lived on the south side of the street and to the east of Seaboard Place, which intersects Collier and runs in a generally north to south direction. Walking in a westerly direction, Lawson would cross Seaboard, and then for about 300 feet along the south side of Collier she would walk in the street along a concrete gutter which was about two feet wide. There was no sidewalk or shoulder along this part of her journey. When the shoulder became available, she would leave the street and walk along a grass covered public right-of-way until she reached a point where Collier began a rather sharp turn to her left. Here she encountered a strand of tree limbs originating from a tree or trees to her left. The limbs completely blocked the right-of-way and grew several feet out into Collier. She could not see through the dense growth of leaves and branches, and motorists driving east could not see Lawson when she was behind the branches. She could not go around the branches to her left because of a steep drop-off in the surface of the ground. She would step to her right off of the shoulder and onto the surface of the street where the concrete gutter was located and listen for the sounds of trucks and other vehicles which might be approaching. When she was satisfied that no vehicles were approaching, she would get as close as possible to the branches, walk around them, and then get back on the shoulder and complete her walk to work.

On the opposite or north side of Collier from Seaboard Place west to the next intersection there was a grassy shoulder with no obstructions and for a portion of her way to work a paved sidewalk. On her morning walks to work Lawson declined to cross Collier at Seaboard from south to north and thus avoid the branches which blocked the right-of-way on the south for two reasons. (1) Morning rush hour traffic on Collier at its intersection with Seaboard was heavy and because of the proximity of this intersection to the crest of a hill to the west on Collier she could not see traffic approaching from the west. (2) Even though on the north side she could walk completely out of the street on a shoulder and ultimately on a sidewalk she did not want to walk with her back to traffic as she walked west. Presumably she feared that if an automobile left the street, jumped the curb and came onto the right-of-way she would not be able to take evasive action because she would not see the automobile until it was too late. She walked home on the north side, generally going one half a mile past Seaboard to Howell Mill Road where she could shop and where a crosswalk here afforded safe passage across Collier from north to south. Occasionally, however, she would stop at Seaboard and cross to the south there.

Shortly after she was struck Lawson gave a statement to an insurance investigator in which she said that she believed both the south and the north routes to work were unsafe.

When Lawson was struck she had been in the street for at least one minute, hidden from the view of motorists going east on Collier and not able to see traffic approaching her from the west. She was thrown up on the grassy shoulder. Her right leg was fractured and she received other painful injuries.

We note from Lawson's testimony that during the ten months she encountered the offending branches, she never complained to the landowner about the branches or requested that they be removed from the right-of-way.

jury when her right leg was broken, and that this injury resulted in some disability. She may have some medical expenses in the future.

4. "The question of damages is one for the jury; and the court should not interfere with the jury's discretion unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." OCGA § 51-12-12.

"After a verdict, the evidence is construed in its light most favorable to the prevailing party, for every presumption and inference is in favor of the verdict." *Boatright v. Rich's, Inc.*, 121 Ga. App. 121 (173 SE2d 232) (1970). After indulging in every presumption and inference in favor of the verdict, we still must conclude that the verdict in this case resulted from gross error. We come to this conclusion from our analysis of the evidence, which, viewed in the light most favorable to Lawson, shows that her own negligence must be considered as at least 49% of the causation of her injury. Hence, in view of the amount of the verdict, we determine that the jury failed to compare Lawson's obvious negligence with that of the landowner, and failed to reduce recovery accordingly. OCGA § 51-11-7. *Central of Ga. R. Co. v. Wooten*, 163 Ga. App. 622 (295 SE2d 369) (1982).

*Judgment reversed. All the Justices concur, except Bell, J., who concurs in the judgment only, and Clarke, P. J., Smith and Gregory, JJ., who dissent.*

SMITH, Justice, dissenting.

"Pedestrians have the right to use the entire highway and are not confined to the sidewalks alone. If a pedestrian leaves the sidewalk and enters upon the portion of the highway devoted primarily to vehicles, the surroundings may require of him the exercise of a greater amount of care and caution for his own protection than if he had remained upon the sidewalk; *but the question of his negligence under the circumstances is one for the jury*." (Emphasis supplied.) *William Bensel Constr. Co. v. Homer*, 2 Ga. App. 369 (58 SE 489) (1907). The question of negligence on the part of Ms. Lawson was for the jury to decide, and they decided in her favor.

To have a thorough understanding of this case, one must look at the case from its inception. In Ms. Lawson's initial complaint she alleged, among other things, that "[t]he unlawful interference with a right-of-way or a right of common constitutes a trespass to the party entitled thereto." OCGA § 51-9-10. During the trial the appellee's theory, and the theory followed by the trial court was that the appellee had a right to be on the right-of-way, that the appellant had an affirmative duty not to obstruct the right-of-way, and that the appellee's actions were reasonable under all the circumstances. The jury was given charges relating to the appellant's negligence, proximate cause, Ms. Lawson's negligence, and assumption of the risk. The jury

was charged with OCGA § 51-9-10, id., and when the jury returned with a question it was recharged as follows: "Under the laws of the State of Georgia it is unlawful for anyone to obstruct or encroach upon any part of any public road. The Official Code of Georgia also provides in part as follows: The unlawful interference with a right-of-way or a right of common constitutes a trespass to the party entitled thereto." The majority states that the tree which grew on the appellant's property "blocked a public right-of-way, and . . . extended out into the street[,]" thus the unlawful interference constituted a trespass to Ms. Lawson.

The Court of Appeals correctly stated that this case " 'does not turn on the issue of a landowner's liability to invitees.' " *McKinney & Co. v. Lawson*, 180 Ga. App. 550, 551 (349 SE2d 763) (1986). The appellant was, pursuant to OCGA § 51-9-10, a trespasser on Ms. Lawson. Ms. Lawson had a right to be on the right-of-way and the appellant had a special duty not to obstruct the right-of-way. The appellant's breach of that duty caused the type of harm that the statute was designed to prevent. The law relating to invitees as set out in Division 2 of the majority opinion has no bearing on this case. "If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably." Restatement of Torts 2d, § 473.

The issue of Ms. Lawson's negligence or lack thereof was decided by the jury in her favor. The trial judge who listened to all of the evidence and observed the demeanor of the witnesses agreed and denied the appellant's motion for a directed verdict. The Court of Appeals examined the negligence issue and stated that "[t]he evidence in the case sub judice did not demonstrate that [Ms. Lawson] was at fault as a matter of law." 180 Ga. App., supra at 552. The issue of Ms. Lawson's negligence or lack thereof was settled, but the majority of this court defies "the well established rule that questions of negligence, diligence, contributory negligence and proximate cause are *peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.* See *Howard v. Savannah Elec. Co.,* 140 Ga. 482 (79 SE 112); *Blanton v. Doughty,* 107 Ga. App. 91, 95 (129 SE2d 376); 16 West's Ga. Dig., Negligence, § 136 (14)." (Emphasis supplied.) *Bussey v. Dawson,* 224 Ga. 191, 193-194 (160 SE2d 834) (1968). This obviously is not a "plain and indisputable case." Id.

Furthermore, the majority found "that the jury failed to compare [what it terms] Lawson's obvious negligence with that of the landowner, and failed to reduce recovery accordingly." There is *absolutely no evidence* that the jury failed to compare Ms. Lawson's negligence with that of the landowner, and failed to reduce recovery accordingly.

The jury was fully and completely charged on the negligence of both the appellant and Ms. Lawson. One of the very first charges the jury heard was as follows: "The law puts the burden of proof upon [Ms. Lawson] to prove by a preponderance of the evidence that she is entitled to recover. However, when the defendant sets up an affirmative defense such as contributory negligence, comparative negligence and assumption of the risk by [Ms. Lawson], the burden of proof rests on the defendant to establish the truth of such affirmative defenses by a preponderance of the evidence."

The charge the trial court gave the jury relating to the law of negligence as applied to the appellee covered four pages. Part of the charge was as follows:

"I charge you that [Ms. Lawson] cannot recover regardless of any negligence on the part of the defendants if you find [that she] assumed the risk involved. One assumes the risk of danger when one voluntarily places one's self in a position where it is likely to strike. One who observes a clearly obvious danger and who fails to exercise that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances must be held to have assumed the risk of resulting injury.

"I charge you that a person who seeks to recover for losses as a result of another's alleged negligent conduct must have exercised ordinary care for his or her own safety. In particular, if there is anything at the time and place of the alleged negligence which would cause a reasonable person to suspect that there might be some danger to him or her in doing an act which he or she is about to perform, then that person must act reasonably first to find out if the danger really exists and then to avoid the consequences if it does.

"Stating it another way, even if you find that the defendant McKinney & Co., Inc. in this case owed a duty to [Ms. Lawson] and that the defendant negligently breached that duty, [she] would not be entitled to recover if by the exercise of ordinary care she could have discovered that such negligence existed and could have avoided the consequences to herself. . . . [the jury was recharged that the above statement also applied to the other defendant.] I instruct you that the Georgia law of comparative negligence is applicable in this case. [the jury was recharged that "comparative negligence may be applicable in this case."] In this particular case *you are to compare* the alleged negligence of [Ms. Lawson], if any, with the negligence of *each* defendant individually. . . .

"In this regard I instruct you as follows: (1) If you find that the negligence, if any, of any individual defendant is less than the negligence, if any of [Ms. Lawson], then in that event [she] could not recover from that particular defendant. (2) If you find that the negligence, if any, of any individual defendant was equal to the negligence,

if any of [Ms. Lawson], then in that event [she] could not recover from that particular defendant.

"If you find that the negligence, if any, of an individual defendant was greater than the negligence, if any, of [Ms. Lawson], then in that event [she] could recover from that particular defendant.

"If you find that the negligence, if any, of an individual defendant was greater than the negligence, if any, of [Ms. Lawson], then in that event [she] could recover from that particular defendant, *but the amount of her recovery would be reduced by the degree of negligence chargeable to [her]*." (Emphases supplied.)

This court is embarking on a dangerous path when it ignores the " 'presumption that the verdict of a jury is based on a fair consideration of all matters presented to it[,]' [Cit.]" *Brown v. Service Coach Lines,* 71 Ga. App. 437, 441 (31 SE2d 236) (1944), and declares that the jury did not do its job despite instructions from the trial court regarding the specific functions it was to perform.

In considering a challenge to a verdict on the grounds of excessiveness, the "appellate court '. . . does not have the broad discretionary powers vested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses . . . has approved the verdict, this court is without power to interfere unless it is *clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means.*' [Cit.] . . . the Court trying the case, must ever receive more light on the question of excessive damages, than it can impart to any other Court.' " (Emphasis supplied.) *Smith v. Milikin,* 247 Ga. 369, 372 (276 SE2d 35) (1981).

The majority has departed from this established rule of law and without finding *any prejudice or bias and without a finding that the verdict was procured by corrupt means* has reexamined and reweighed the evidence in this case and determined, through an unexplained mathematical formula, an exact percentage of negligence to attribute to Ms. Lawson in order to justify a holding that the verdict is excessive.

A petition for the writ of certiorari is not a right, and it will be granted only in cases of great concern, gravity, and importance to the public. Rule 29 of the Supreme Court of Georgia. The adoption of Rule 29 came after the decision in *Central of Ga. R. Co. v. Yesbik,* 146 Ga. 620 (91 SE 873) (1917), where this court said: "In the light of the constitutional history of the origin and purpose of the creation of the Court of Appeals and the amendment to the constitution adopted in 1916, defining the jurisdiction of the Supreme Court and the Court of Appeals, and giving to the former court power by certiorari or otherwise to review the decisions of the latter court, this power should not be so carelessly exercised as to have the effect of prolonging litiga-

tion by converting the Court of Appeals into an intermediate court, so as to burden the docket of this court with cases intended by the constitution, under ordinary circumstances, to be reviewed by the Court of Appeals and to be controlled by the judgment of that court. Accordingly, great caution will be exercised and the writ issued only in cases involving questions of great public concern and in matters of gravity and importance." See also *Spindel v. Jones,* 227 Ga. 264, 265 (180 SE2d 242) (1971). This case does not involve questions of great public concern but the majority opinion makes this case a grave one and of vital importance to the public.

Just two years ago this court stated in a unanimous opinion that "[w]here the amount of a verdict is within the range of testimony it will not be disturbed on appeal. [Cit.]" *C & S Nat. Bank v. Haskins,* 254 Ga. 131, 136 (327 SE2d 192) (1985). The amount of the verdict in this case was within the range of the testimony, and it is certainly not in the record that the verdict of the jury was prejudiced or biased or procured by a corrupt means nor does the appellant claim such. The jury was fully informed with regard to the law of negligence as it applied to both the appellant and the appellee and was fully and completely charged on the issue of damages.

This case involves a 29-year-old woman who suffered severe damage to her leg when she was struck by an automobile. Both bones in her leg, the tibia and fibula, received multiple fractures at the knee, and the ligaments in her leg were torn and damaged. During surgery following the injury, the orthopedic surgeon had to place a screw in the bones to realign them, and staples in the ligaments to reanchor them. Ms. Lawson remained hospitalized for ten days following the surgery. When she was released, she had to move home with her parents for approximately six weeks. Before she could return to her apartment, she had to move from her second floor apartment to a first floor apartment because she could not climb the stairs.

In the words of the orthopedic surgeon, she has a "severely damaged knee which will never be normal." He also stated that the damaged knee will deteriorate, that she is and will continue to suffer from pain, and that she is and will be limited in the degree of physical activity that she can participate in due to the instability of the knee. He said that the "impairment of function of this knee is a minimum of 50 percent of normal." In describing the condition of her damaged knee, he said: "A similarity can be drawn between her left knee which is a new tire on a well-aligned front end and her right knee which is a new tire on an unaligned, wobbly wheel, one wearing out much faster than the other."

At the time of the trial, the appellee was facing the prospect of being hospitalized again to remove the screw and staples. The hospital stay for the removal of the screw and staples will be between 3 to

5 days.

Ms. Lawson testified that she is in pain, that she cannot walk without pain, she cannot walk distances, she is fearful in crowds because she is afraid that someone will bump into her and because of the instability of her knee cause her to fall down. She also testified that on rainy days there is more pain and that at the end of a day's work the leg is swollen and it throbs. She cannot jump, climb, kneel, or squat because of the pain. She cannot hike or walk for pleasure because of the pain, and she cannot exercise. She is restricted in movement and is unable to be as involved in her hobbies as she was in the past because of the pain. She has suffered from bouts of depression due to her restricted physical movement and the pain.

The trial court gave the jury charges, without objection, that covered eight pages, concerning the compensation it could award the appellee if it found that she was entitled to damages. The jury was instructed that it could award her as compensation for her injury, her past and future medical expenses, and compensation for her physical and mental pain and suffering. The jury was charged that it could, in determining the amount of the award, consider the type of injury Ms. Lawson received and its character for producing or not producing pain, the severity of the pain, and its probable duration. It was instructed that it could consider her mental suffering, the impairment to her capacity to enjoy life, and the distress she may sustain because of the injury. It was also instructed that her distress or worry could constitute pain and suffering and further if it found that the pain and suffering would continue into the future that she was entitled to recover for future pain and suffering. The jury was also instructed that it could not base it verdict on sympathy or prejudice and that its verdict had to be supported by the evidence produced at trial without being affected by sympathy or prejudice. It was further instructed that "[t]he amount of damages to be awarded for pain and suffering has no standard of measurement except the enlightened consciences of fair and impartial jurors."

The jury heard the 29-year-old appellee's testimony and the doctor's testimony and they valued the appellee's past, present, and future medical expenses; her lack of a present and future ability to engage in her hobbies as she had in the past; her lack of a present and future ability to engage in any sort of activity that puts stress on her knee; the past, present, and future pain and suffering and the prospect of the pain never getting any better, only worse over time at $350,000. Does that amount, when considered in connection with the fact that Ms. Lawson has and will continue to suffer because of a trespass committed against her, "shock the moral sense, appear 'exorbitant,' 'flagrantly outrageous,' and 'extravagant[?]' . . . [Is it] 'monstrous indeed and such as all mankind must be ready to exclaim

against at first blush[?]' [Does it] carry its death warrant upon its face[?]" *Realty Bond &c. Co. v. Harley,* 19 Ga. App. 186, 188 (91 SE 254) (1917). Certainly not!

Our constitution provides that "[t]he right to trial by jury shall remain inviolate." Ga. Const., Art. I, Sec. I, Par. XI. The question of damages is for the jury, and courts are not to interfere with the discretion of the jury unless, as noted above, the damages are so small or so excessive as to justify the inference of gross mistake or undue bias. OCGA § 51-12-12. "Gross mistake or undue bias, unless directly shown, do not appear circumstantially except where there is no other reasonable hypothesis which will explain the amount. [Cit.]" *Atlanta Veterans Transp. v. Cagle,* 106 Ga. App. 551, 556 (127 SE2d 702) (1962). There is no evidence of gross mistake or undue bias in this case, the majority incorrectly "conclude[s] that the verdict in this case resulted from gross error." "Gross error" as contended by the majority has no basis in law or fact.

I would dismiss the writ of certiorari in this case as being improvidently granted.

DECIDED MAY 7, 1987 —
RECONSIDERATION DENIED JUNE 18, 1987 AND JULY 8, 1987.

*Smith, Gambrell & Russell, David A. Handley, Hishon & Ranney, Hugh M. Worsham, Jr.,* for appellant.
*Ford & Haley, James L. Ford,* for appellee.