77059. CSX TRANSPORTATION, INC. v. DARLING.
(377 SE2d 217)

BANKE, Presiding Judge.

Darling was awarded a verdict of $800,000 in a personal injury action against Seaboard System Railroad, Inc., brought pursuant to the Federal Employers' Liability Act (FELA), 45 USCA § 51 et seq. While the suit was pending, Seaboard became known as CSX Transportation, Inc. In this appeal from the denial of its motion for new trial, CSX contends that the verdict and judgment should be reversed as excessive.

Darling had worked for the railroad since 1961 as a switchman at a rail yard, where large freight trains were broken down and their cars reassembled into smaller trains headed towards the same destination. In this process, the cars were individually set in motion by a switch engine and then guided to their proper destinations in the yard by opening and closing switches, until they ultimately struck and coupled with the other cars making up the same train. Darling's job was to operate the switches, and in order to get to them he would some-

times ride the unattended cars as they proceeded through the yard. On the occasion in question, a car on which Darling was riding was sideswiped by another car, which had failed to couple with the other cars to which it had been routed and had thus been propelled back in the direction from which it had come. Darling's left arm was caught between the two cars, severely injuring it. According to the treating physician, who was the railroad's company doctor, Darling sustained a "severely comminuted [i.e., crushing type] fracture of essentially the whole shaft of his . . . upper arm bone." The bone was "broken into a minimum of four different pieces."

There was evidence that before being transported to the hospital, Darling was kept waiting for over an hour so that his supervisor could see for himself whether the injury was serious enough to warrant calling an ambulance. Although Darling was hospitalized for only three days, he was out of work for the next six months. Upon his return, he was assigned to work as a switchman on through freights, a job which requires less switching than does being a switchman at a rail yard. He has remained at that work since then, although he has periodically missed time due to the residual pain caused by his injury. Darling's co-workers testified that while on the job he would rub his arm from time to time and, when the weather was cold, would try to get his arm "easy" by warming it near the stove. In the opinion of the company physician, Darling had suffered a 10-percent permanent disability to his arm, which translated into a 4-percent disability to the whole person.

At the trial, which took place over four years after the injury, Darling testified that he still suffered constant, severe pain in his shoulder and elbow and that he also experienced numbness through his arm and into the fourth and fifth fingers of his hand. The treating physician testified that the numbness could be attributable to pressure on the nerves caused by scar tissue. In his unsuccessful efforts to obtain relief from his pain, Darling has consulted several other physicians, has tried various types of pain medication, and has received cortisone shots in his arm and shoulder. His residual pain prevents him from sleeping for more than two or three hours at a stretch, restricts his recreational and household activities, and has caused him to become irritable with his family.

There was evidence that the appellee has incurred $1,757 in medical expenses, that he lost $10,500 in wages during the six months following the accident when he was completely disabled, and that he subsequently lost $36,840 in wages due to periodic disability attributable to the injury. There was also evidence that he can be expected to lose up to about $145,000 in wages in the future due to the residual pain from his injury. After application of a discount factor to reduce future damages to present value, the jury was thus authorized by the

evidence to award him up to about $185,000 as special damages. The only other element of compensable damages was pain and suffering, which therefore amounted to at least $615,000 of the $800,000 verdict. *Held*:

1. "Questions concerning the proper measure of damages in FELA cases, like questions of liability, are to be settled according to general principles of law as administered in the federal courts. *Chesapeake & Ohio R. Co. v. Kelly*, 241 U. S. 485, 491 (36 SC 630, 60 LE 1117) (1916); *Norfolk & Western R. Co. v. Liepelt*, 444 U. S. 490, 493 (100 SC 755, 62 LE2d 689) (1980). It has been held that the damages recoverable under the FELA on account of a railroad employee suffering injury or death on the job are compensatory only and that punitive damages are not recoverable. (Cit.) However, the jury's determination of the amount of damages to be awarded is otherwise inviolate, 'absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial. . . . (Cits.)' *Lane v. Gorman*, [347 F2d 332], 335 [(10th Cir. 1965)]. This standard of review is consistent with that which obtains under Georgia law, which has been stated as follows: 'Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "[exorbitant]," "flagrantly outrageous," and "extravagant." "It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush." It must carry its death warrant upon its face.' (Cits.)" *Seaboard System R. v. Taylor*, 176 Ga. App. 847, 849 (2) (338 SE2d 23) (1985).

There is no "direct proof" in this case that the jury's verdict resulted from prejudice or bias against the appellant. In opposition to the motion for new trial, Darling in fact submitted affidavits from several jurors to the contrary. Thus, we have no basis to assume that in assessing damages for pain and suffering, the jury was responding to anything other than the evidence presented on that issue. In the context of this evidence — which established that Darling sustained a bone-crushing trauma to the entire upper half of his left arm which has left him in such constant and severe residual pain that, years later, he is still unable to sleep at night for more than two or three hours at a stretch — we must conclude that the verdict is not so exorbitant, flagrantly outrageous or extravagant on its face as to shock the judicial conscience or to demonstrate that the jury intended for a portion of its award to constitute punitive rather than compensatory damages. It follows that the verdict is not subject to reversal for excessiveness on appeal. Accord *Simpson v. Reed*, 186 Ga. App. 297, 300 (11) (367 SE2d 563) (1988).

The appellant's reliance on such cases as *Seaboard System R. v. Taylor*, supra, and *Nairn v. Nat. R. Passenger Corp.*, 837 F2d 565, 568 (2d Cir. 1988), as authority for a contrary conclusion is misplaced. The plaintiff in *Seaboard System R. v. Taylor* sought to recover for back pain which she had begun to experience after jumping a distance of about three feet to the ground from a switch engine traveling at 10 to 12 miles per hour. She was not aware of any back pain at the time of the incident, did not begin to feel any until three weeks later, and did not seek medical attention until 20 months later, when she consulted an orthopedist at the request of her attorney. The orthopedist identified her condition as "dysfunctional low back pattern," meaning "there is something wrong producing symptoms about the lower back." He testified that the plaintiff's condition had improved since he had been treating her, that her prognosis was "excellent," and that he had never assigned her a disabling rating or advised her to quit working. Moreover, he acknowledged that her condition was consistent with such other possible causes as heavy sneezing or coughing, stepping off a curb, or being manipulated by a chiropractor, none of which, it is fair to say, are indicative of severe trauma. The injury involved in that case was, in short, very minor in comparison to the injury involved in the present case.

The severity of the injury involved in *Nairn v. Nat. R. Passenger Corp.*, supra, similarly cannot be equated with that of the injury in the present case. The plaintiff there hurt his back while attempting to lift a piece of heavy equipment which was embedded in ice. He completed his shift but continued to experience pain. Following a series of diagnostic tests which included X-rays, a CAT scan, and a myelogram, he was diagnosed several months later as having "musculoligamentous strain." He later re-injured his back while shoveling wet sand at a construction site. The ultimate diagnosis was "lumbosacral strain which produced a certain degree of disc degeneration." Id. at 567. Clearly, the severity of the trauma and resulting injury in the present case is categorically greater than was the case in either *Nairn* or *Taylor*. Indeed, this case is perhaps closer to *Vanskike v. Union Pac. R.*, 725 F2d 1146 (8th Cir. 1984), where an award of approximately $1,100,000 for pain and suffering was upheld in a FELA case as compensation for a bone-crushing injury to the upper arm, albeit one which had resulted in the amputation of the arm between the shoulder and elbow.

2. The appellant contends that the trial court erred in failing to exclude certain "prejudicial" and "unwarranted" statements made by Darling's counsel, as well as remarks made by certain witnesses, all of which allegedly prejudiced its defense. Since these remarks were not objected to in the trial court, they provide nothing for review on appeal. See, e.g., *Seaboard Coastline R. Co. v. Delahunt*, 179 Ga. App.

647 (3) (347 SE2d 627) (1986).

3. During his closing argument, Darling's counsel suggested to the jury a formula for determining the amount of damages to be awarded for pain and suffering. The appellant contends that counsel's argument in this regard sought multiple recoveries for the same element of damages. We disagree. Counsel merely listed ten elements which, "put together," could properly be used in assessing an amount of damages to be awarded for pain and suffering. In doing so, he specifically admonished the jury to apply the law of damages given by the court in its instructions. We hold that the argument in question was neither improper nor misleading.

4. The trial court did not err in considering the affidavits of certain jurors which Darling submitted at the hearing on the motion for new trial in an effort to rebut the appellant's assertion that the award was the product of bias or prejudice against the railroad. Pursuant to OCGA § 9-10-9, affidavits of jurors may be taken to sustain though not to impeach their verdict. See generally *Wright v. Satilla Rural &c. Co-op.*, 179 Ga. App. 230 (1) (345 SE2d 892) (1986); *Seaboard Coastline R. v. Towns*, 156 Ga. App. 24 (4) (274 SE2d 74) (1980).

*Judgment affirmed. Deen, P. J., McMurray, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. Birdsong, C. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

Although I concur in Divisions 2, 3, and 4, I respectfully dissent because the award for pain and suffering must be deemed excessive under FELA law.

The humerus bone of the arm between shoulder and elbow was broken in four places in a comminuted fracture, meaning that the breaks were jagged rather than clean. The injury was severe and Darling was hospitalized for three days. Surgery was not required, but his arm was casted. He was then followed for a year by Dr. Waldrop, the orthopedic surgeon who had treated him at the hospital. The bone completely healed, but Darling continued to have pain in his shoulder and elbow, as well as some "popping" in his joints.

Associated with an injury such as the one Darling suffered is extensive soft tissue damage which will not be evident on X-rays. Dr. Waldrop saw Darling again in November 1986, in preparation for his deposition in this case. Darling still complained of pain and some numbness down the inside of his arm and in his fourth and fifth fingers. Dr. Waldrop opined that this could be caused by scar tissue or pressure on a nerve. In his opinion, Darling suffered a 10 percent permanent disability in his upper arm which would be 1 percent to 4 percent disability of the whole man.

Darling saw a second doctor in 1986 and received three cortisone

shots in his elbow and shoulder for pain. That doctor's opinion was that Darling had bursitis and would continue to have residual pain. The bursitis could have been the result of the trauma.

In preparation for trial, Darling was seen by Dr. Wofford, a specialist in the treatment of chronic pain, in 1984. He underwent a thermogram, a heat sensitive photograph which shows more than normal heat being emitted from painful areas. In his opinion, Darling was experiencing pain in his left arm and shoulder.

Darling missed six months of work during his recovery. After his return to work as a switchman, his arm was painful but this did not prevent him from doing his job. Co-workers stated that he would rub his arm from time to time and, when the weather was cold, would try to get his arm "easy" by warming it near the stove. He worked as a switchman on a through freight, which required less switching than a local or a yard job. His salary, due to raises, was near the $50,000 per year mark in 1985.

According to both Darling and his wife, the pain interfered with his sleep and he was unable to sleep more than two or three hours at a stretch. Also, he became irritable and was unable to help his son with his motorcycle racing or perform household tasks as he had done before the injury.

Giving Darling the benefit of the highest figures, his actual damages over his life were $193,597. The jury was required to reduce this figure to $183,917, its present value using a 5 percent reduction factor. The only other compensable element was pain and suffering. The verdict and judgment were for $800,000.

Having carefully examined the record of the evidence and argument which was submitted the jury, and having given the plaintiff the benefit of all doubts as to the facts, and applying the federal standard, the award of over $616,000 for pain and suffering exceeds that inexact amount which would not carry the irresistible inference that an improper cause prompted it. Whether the cause was prejudice, sympathy, humaneness, punishment, a misunderstanding of the components of compensation, or something else, the minimum amount attributable to the only non-special element of damages is excessive to the degree that it shocks the judicial conscience as a matter of law.

I recognize that the age-old test is subjective, but it nevertheless is a test of law and appeals to the conscience of the court and not to the private and personal consciences of the individuals who serve as judges. I also recognize that as an appellate court, the question is whether the trial court's conscience should have been shocked as a matter of law. Otherwise the denial of a new trial was not an abuse of discretion. See *Cullen v. Timm*, 184 Ga. App. 80, 83 (2) (360 SE2d 745) (1987); *Great Atlantic &c. Co. v. Turner*, 180 Ga. App. 533, 536 (349 SE2d 537) (special concurrence) (1986).

Although there are no specific criteria or factors in law by which the court's conscience is governed, those objective facts considered in other cases give guidance to a measurement. *Nairn v. Nat. R. R. Passenger Corp.*, 837 F2d 565, 568 (2d Cir. 1988).

While no case has been found involving exactly the circumstances of plaintiff here, there are several comparable ones. *Taylor*, supra, involved a railroad hostler helper, one who rides the engine and lines up switches, who, afraid that a collision was about to occur, jumped off the engine onto the ground, a distance of three feet. Although she felt no immediate pain, she thereafter suffered "dysfunctional low back pattern" and bursitis in her heel. She missed 180 days of work due to her condition, with lost wages of $14,000. She was able to continue working for the railroad. She testified that she was no longer able to perform her normal life activities including bowling, cutting grass, swimming, etc., due to the pain. This court concluded that compensatory damages in the amount of $250,000 were excessive.

In *Seaboard C. L. R. v. Towns*, 156 Ga. App. 24 (274 SE2d 74) (1980), a railroad employee was injured when the platform on which he was standing gave way. He suffered a traumatized disc in his spine and would never again be able to do the heavy type work he had previously been doing for the railroad. He was unable to continue working for it. He suffered continual back pain, pain and numbness in his legs and arms, and periodic loss of equilibrium. This court upheld a verdict of $220,000 which included $3,000 in medicals.

In *Central of Ga. R. Co. v. Nash*, 150 Ga. App. 68 (256 SE2d 619) (1979), 41-year-old Nash suffered an injury to his knee when a defective grab iron came off in his hand causing him to fall. As a result, he had to have surgery twice on the knee, during which his kneecap was removed. He suffered "excruciating" pain, had to undergo substantial drug therapy, and had regained only 80 percent of the strength in his knee two years after the accident. At times, he was seen to have tears in his eyes as he attempted to put weight on his injured leg. As a result of the injury, arthritis had developed in his knee, which made a grinding noise as he walked. He had increased susceptibility to severe arthritis because of his injury and a greater chance than normal that the knee would wear out completely and the entire joint would have to be removed. Medical expenses, which would continue, were $2,779.10 at the time of trial, and wages lost as a result of his ten-month absence were $12,726.58. The verdict of $300,000 was upheld here after a motion for new trial was denied.

A verdict of $600,000 was upheld in *Ball v. Burlington Northern R. Co.*, 672 SW2d 358 (Mo. Ct. of App. 1984), a FELA case in which a painter for the railroad was constantly exposed to toluene diisocyanate, which the railroad knew or should have known caused serious lung damage. As a result of his exposure, Ball, who had no lung

problems prior to working for the railroad, developed severe lung problems which were permanent and disabling. Due to lack of oxygen, his heart was also working harder than normal. Because Ball was permanently totally disabled, would incur substantial medical expenses in the future, and was in constant pain and suffering, the court upheld an award of $600,000.

In *Nairn v. Nat. Passenger Corp.*, supra, an award of $765,000 for a back injury was upheld by the trial court, which denied the railroad's motion for new trial, but then overturned as excessive by the appellate court under FELA.

Nairn was a foreman of a construction and repair crew. He was 33 years old. While attempting to lift a piece of heavy equipment embedded in ice, he injured his back. Although he continued working, the pain worsened and he sought medical attention. He was diagnosed as suffering from a muscular/ligament strain, and, after reinjuring his back on the job, as having some disc degeneration. He had a 15% permanent back function impairment. He was advised not to do heavy work. As a result, he quit working for the railroad and took a job paying less, with no benefits. He experienced a great deal of pain, could no longer engage in sports, roughhouse with his children, or perform his previous household chores such as chopping wood, shoveling snow, etc. He had become "distant" since his injury and was depressed.

The value of Nairn's lost wages, his only special damages, was found to be $350,000, leaving a $400,000 award for pain and suffering.

The Second Circuit held that: "[W]e do not mean to belittle Nairn's pain and disappointment at no longer being the active, athletic man he once was or to minimize the very real impact of the injury on Nairn's life and lifestyle. We conclude, however, that an award for pain and suffering of at least $400,000 for a 15% functional impairment is one that 'shocks' the judicial conscience.' " Id., at 568.

In Darling's case, without belittling his pain and suffering in any way, the facts are that he suffered only a 4 percent disability maximum, was able to work as a railroad switchman, and was unlikely to incur future medical expenses due to the injury, although he might receive pain counseling. The pain which he suffers is intermittent and, although there are changes in his daily life, they are not comprehensive. The $616,000 solely for pain and suffering was so excessive that I am compelled to conclude that a new trial on the issue of damages is required. Cf. *McKinney & Co. v. Lawson*, 257 Ga. 222 (357 SE2d 786) (1987), which applies the state law on excessiveness.

I am authorized to state that Chief Judge Birdsong joins in this dissent.

Decided December 5, 1988 —
Rehearing denied December 20, 1988 — 

Alston & Bird, James H. Senterfitt, Elizabeth A. Price, for appellant.

Billy E. Moore, for appellee.